## WELCH et al. v. SHOUBROUEK.
### No. 4900.

Court of Civil Appeals of Texas. Beaumont.
June 25, 1953.

Fulmer & Fairchild, Nacogdoches, for appellants.

Jack Varner and James F. DeLoney, Nacogdoches, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal in a will contest from a judgment in the district court of Nacogdoches County, admitting the contested will to probate.

By the terms of the will offered for probate the deceased, Jack Welch, made F. B. Shoubrouek, the contestee, the sole beneficiary. Lonnie Welch, Frank Welch and Mary E. Sanders, the contestants, were the only surviving heirs at law of the deceased. They were the brothers and sister of the deceased.

The will was executed before an attorney and a physician as witnesses. There was ample evidence adduced in the trial of the case to support the findings of the jury that the deceased had testamentary capacity and was not acting under undue influence at the time he executed the will. There was also some evidence showing some peculiarities in the actions and conduct of the deceased which raised a fact issue as to his mental capacity to make

a will. There was evidence also that F. B. Shoubrouek, the beneficiary in the will, was a long-time friend of the deceased and that the brothers and sister of the deceased had not been in close contact with the deceased for many years before his death. There was evidence that Shoubrouek conveyed the deceased into Nacogdoches to the entrance of his lawyer's office at the time he made the will. There was also evidence offered, but rejected by the court on objection, that Shoubrouek on the same day conveyed the attorney who drew Mr. Welch's will out to his farm home, where he and another person witnessed the execution of the will by Mrs. Jack Welch. Mrs. Welch was ill at that time.

The case was submitted to a jury on two special issues. Those issues, together with the answers made by the jury in its verdict, were as follows:

"Special Issue No. 1

"Was Jack Welch at the time he executed the will now offered for probate of sound mind? Answer 'Yes' or 'No'.

"Answer Yes

"The burden of proof is upon the proponent, Fred Shoubrouek to show by a preponderance of the evidence that Jack Welch was of sound mind at the time of the execution of the instrument offered for probate, that is, that he, Jack Welch, had the capacity to know and understand what he was doing, and the effect of his act at the time he executed said instrument. If he had that capacity his mind was sound; if he did not have it, his mind was unsound.

"If you have answered the foregoing special issue 'Yes' and only in that event, then answer the following issue:

"Special Issue No. 2

"Do you find from a preponderance of the evidence that the making and execution of the instrument, which is sought to be probated here as his last will and testament, was procured by 'undue influence' on the part of the proponent, Fred Shoubrouek?

"Answer 'Yes' or 'No'.

"Answer No

"In connection with the foregoing term 'undue influence', you are instructed that undue influence is such influence or dominion as exercised at the time, under the facts and circumstances of the case, which destroys the free agency of the testator, and substitutes in the place thereof the will of another."

On this verdict the court rendered judgment admitting the will to probate. From that judgment the contestants have perfected their appeal to this court.

The contestants objected to Special Issue No. 1 and the instruction as given in connection therewith in language which was adequate to call the court's attention to the deficiencies of the issue and instruction and in connection with the objection tendered a special issue and instruction which they requested the court to submit. This request was refused. The Special Issue requested was as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that at the time Jack Welch executed the purported will, which has been offered for probate on this trial as his last will and testament, he possessed 'testamentary capacity' as that term is defined to you below?

"Answer 'Yes' or 'No'.

"Answer: ———

"You are charged in connection with the term 'Testamentary Capacity' that a person, to have testamentary capacity, as that term is used in this charge, is meant that such person at the time of the execution of the will, must have had sufficient mental ability to understand the business in which he was engaged, the effect of his act in making the will, and the nature and extent of his property; he must be able to know his next of kin and the natural objects of his bounty and their claims upon him; he must have memory sufficient to collect in his mind the elements of the business about to be transacted and to hold them long enough to perceive at least their obvious

relation to each other and to be able to form a reasonable judgment as to them."

■ On the authority of Morris v. Morris, Tex.Com.App., 279 S.W. 806, the requested issue and instruction or one similar in nature should have been given and failure to do so constituted reversible error. As pointed out in the opinion in Morris v. Morris, supra, all of the elements specified in the charge are essential to testamentary capacity and contestants were entitled on request to have them included in the court's charge defining testamentary capacity. The necessity for this definition of testamentary capacity is required in such a will contest as this, in which the testator has by will left his property to a person or persons who are not related to him and has not named any of his relatives as beneficiary under the will. See, also, Rutherford v. Robbins, Tex.Com.App., 298 S.W. 549; Peareson v. McNabb, Tex.Civ.App., 190 S.W.2d 402. Appellants' first, second and third points are therefore sustained.

■ The appellee says in answer to the appellants' complaints about the charge that since there was no evidence raising the issue of testamentary capacity the errors in the manner of submission of the question were harmless. Appellee relies on Reiche v. Williams, Tex.Civ.App., 183 S.W.2d 587. We have read that case and notice that in 143 Tex. 365, 185 S.W.2d 420 the Supreme Court refused an application for writ of error for want of merit, but the court in a written opinion specifically held that the evidence did raise the issue of mental incapacity and refused the application for want of merit on the ground that the issue was properly submitted to the jury and determined adversely to the contestant. The case relied on by the appellee here has no application, as we believe that the evidence here raised a fact issue as to testamentary capacity of the deceased.

■■ By their fourth point the appellants complain of the action of the trial court in allowing a physician witness to testify that in his opinion "the testator had

testamentary capacity to understand the objects of his bounty and the nature and extent of the topic of the will." We think the objection by the contestants should have been sustained. The doctor could go further in giving his opinion regarding the mental capacity of the testator than could a layman witness, but the question and answer complained of permitted the doctor to testify to a legal conclusion. The use of the phrase "testamentary capacity" in the questions asked the doctor were unfortunate. If the words "mental capacity" had been used, probably no harm would have been done. Since the judgment must be reversed because of errors in the charge, as pointed out above, it is believed that the court and counsel on another trial will be more explicit in the use of words in this respect. On another trial, with the proper wording of the special issue regarding testamentary capacity and proper instructions thereunder, the physician as a witness should be permitted to testify whether in his opinion the testator at the time he executed his will, had sufficient mental ability to understand the business in which he was engaged, the effect of his act in making the will, the nature and extent of his property, to know his next of kin and the natural objects of his bounty and their claims upon him, to have memory sufficient to collect in his mind the elements of the business in which he was engaged and to hold them long enough to perceive at least their obvious relation to each other and to be able to form a reasonable judgment as to them. These various matters could be inquired about in separate questions and answers and would be a proper subject for the physician's expert testimony. See: Adamson v. Burgle, Tex.Civ.App., 186 S.W.2d 388; Pearson v. McNabb, supra.

■ By their fifth point appellants complain that the court on objection excluded their tender of testimony to the effect that Mr. Shoubrouek, the beneficiary in Mr. Welch's will, had some connection with the execution of the will of Mrs. Welch on the same day that Mr. Welch's will was executed. We believe the trial court's overruling was error and the evidence should have been received as circumstantial evidence on the question of undue influence by Mr. Shoubrouck in the execution of the will by Mr. Welch. The two events were closely connected in point of time and appellants should have been permitted to show all the surrounding circumstances of the execution of Mr. Welch's will.

■ By their Points Six, Seven and Eight the contestants complain of the action of the trial court in excluding the testimony of the witnesses J. O. Simmons, J. R. Holt and Vernis Fulmer. This testimony was offered for the purpose of impeaching the testimony of Shoubrouek, the contestee. This was the second trial of the case and the testimony tendered was to the general effect that on the previous trial Shoubrouek had testified that he had given the Welches about $700, all in checks; and that he had the cancelled checks. On the present trial Shoubrouek denied so testifying at the previous trial. The trial court sustained the objection to this testimony by persons who were in the courtroom and heard the witness testify at a previous trial on the ground that the shorthand notes taken at the previous trial would be the best evidence. The method used most commonly to show the testimony of a witness on a previous trial is by producing the shorthand reporter with his transcript of the testimony and having him testify to what was said by the witness. However, this is not the only way that such testimony can be shown. Testimony at the former trial can be shown by anyone who heard the testimony and remembers it and can identify the witness who gave it. Texas & N. O. Ry. Co. v. Williams, Tex.Civ.App., 178 S.W. 701, 17 Tex. Jur. 661 and cases cited. The best evidence rule does not seem to apply here. See Pettit v. Campbell, Tex.Civ.App., 149 S.W.2d 633. We do not believe that this matter presents reversible error, however, since the impeachment sought was in regard to a collateral matter.

For the errors noted above the judgment of the trial court is reversed and remanded for a new trial.