Mrs. J. G. WILKINSON et al., Appellants,

v.

Milton D. WILKINSON, Appellee.

No. 6255.

Court of Civil Appeals of Texas.

Beaumont.

March 26, 1959.

Rehearing Denied April 15, 1959.

Marion G. Holt, Nacogdoches, for appellant.

James A. Doherty, San Augustine, for appellee.

McNEILL, Justice.

This is a will contest which originated in the county court of San Augustine County. Appellee Milton D. Wilkinson filed for probate a certain instrument dated November 9, 1956 alleged to be the last will of Minnie Lee Verdell, deceased. Appellants, Mrs. J. G. Wilkinson (mother of deceased) and her daughter, Mrs. Emma T. Miller, (sister of deceased) joined by her husband, J. Smith Miller, opposed the probate on the grounds that appellee had secured the execution of the will through undue influence and that at the time the will was executed the deceased did not have testamentary capacity. From an order of the county court probating the will, Mrs. Wilkinson and Mrs. Miller, joined by her husband, appealed to the district court where upon a trial before a jury and verdict finding that the deceased did have testamentary capacity and there was no undue influence exerted upon her, judgment was again rendered upholding the will, hence this appeal by contestants.

This appeal is before this court on one point of error, which reads: "The trial court erred in admitting testimony of the witness, Doctor Kreimeyer, to the effect that Minnie Lee Verdell was mentally able and had testamentary capacity to make a will, such statements being made over the objection that such statements invaded the province of the jury."

The testimony complained of was given by Dr. James H. Kreimeyer, who testified that he was connected with the Rusk State Hospital at Rusk, Texas, and had been for about three years; that his work had to do altogether with mental patients and that he had treated the deceased, who had voluntarily spent about two months in the summer of 1957 in the Rusk State Hospital. He said she was neurotic and run down physically. While on the witness stand as appellee's witness and after having given a description of her mental and physical condition, and having stated that he had seen her professionally practically every day during her residence at the hospital, the following took place on direct examination:

"Q. Doctor, based on that, from a medical standpoint, would you say that she was a competent person or an incompetent person?

"By Mr. Hot: Now, Your Honor, we are going to object to that as being an improper question there; it is not the proper criteria for determining testamentary capacity; and we are going to object to it for that reason.

"By the Court: You might elaborate on that question—competency in what respects.

"Q. In regard to making a disposition of her property by will?

"By Mr. Holt: We are going to object to that as being—that is for the jury to decide whether or not she is competent to make a will; that is invading the province of the jury, and

we are going to object to that for that reason.

"By the Court: Objection overruled.

"By Mr. Holt: Note our exception.

"Q. Dr. Kreimeyer, what was your answer to that, in regard to her competency? A. I hadn't answered it, but—

"Q. I mean what would your answer be? A. I would say that she was in possession of her mental faculties to that extent."

■ Appellants assert that the court erred in allowing the doctor to testify that the deceased, in effect, was in possession of her mental faculties to the extent of making disposition of her property by will, and cite as authority therefor the leading case of Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 627, 628, 36 L.R.A. 64. This case holds that a witness, either lay or expert, may not testify that a testator has or has not the mental capacity to make a will, since this involves a legal conclusion. On this point the court said: "It is important to keep before us in the discussion of this question the distinction between opinions of witnesses upon a mental condition, as sanity or insanity and the like, which are allowed by nearly all the authorities, and such opinions when directed to the question of legal capacity to perform the act in question." The court then states as the reason for excluding questions asking for legal conclusions that the expert, not knowing the law applicable, will apply his own notion of the legal standard of testamentary capacity which may mislead the jury. The case of Pickering v. Harris, Tex.Com.App., 23 S.W.2d 316, discusses Brown v. Mitchell and reaffirms the holding therein made, and in addition, besides ruling testimony involving the legal conclusion of legal capacity not admissible, held that to allow such testimony also invades the province of the jury. Although some authorities (Sec. 1421, McCormick & Ray, Texas Law of Evidence, 2nd Edition, Vol.

2, pages 252–256, and Adamson v. Burgle, Tex.Civ.App., 186 S.W.2d 388) question the soundness of this second reason under this case, we believe appellants' objection to the quoted testimony was good. While the overall question above quoted did not inquire of the doctor whether the deceased had mental capacity to make the very will in question, yet we think this is its effect. Wiseman v. Robbins, Tex.Civ.App., 230 S.W.2d 371.

■ But appellee asserts in his counterpoint that having cross-examined the doctor in relation to the testimony objected to after the above ruling of the court, appellants had waived the error. We do not think this is a sound proposition. A party does not waive his objection to inadmissible testimony by cross-examination in relation thereto. Cathey v. Missouri, K. & T. R. Co., 104 Tex. 39, 133 S.W. 417, 33 L.R.A., N.S., 103.

■ Appellee urges also that since other testimony of a similar nature by the doctor was admitted without objection, the error of the court in admitting the testimony complained of is harmless. Counsel for appellee on redirect examination elicited from Dr. Kreimeyer the following testimony which was not objected to:

"Q. During the time she was over there, based on your examinations of her are you in a position to testify that she was capable of knowing the general nature and extent of her property, knowing what her property was and what it consisted of? A. I would presume she was.

"Q. Do you think she would have been able to know who her relatives and next of kin were? A. I think so.

"Q. Do you think she would be able to know what we call the natural objects of her bounty and their claims upon her, that is, the people who might expect to receive something from her at her death? Do you think she would

be able to know who those people might be? A. I would think so.

"Q. Do you think she would have memory sufficient to collect in her mind the elements of business about to be transacted in making a will and to hold those elements long enough to perceive at least their obvious relations to each other and to be able to form a reasonable judgment as to them, as to those elements? A. I think so.

"Q. Do you think that she would at that time have had sufficient mental ability to understand the business in which she might have been engaged in making a will and understand what she was doing? A. I think so.

"Q. Do you think she would have at that time been able to understand the effects of her act in making a will? A. Yes, sir."

It will be noted that these various questions took separate parts of the ordinary definition of "testamentary capacity" and interrogated the doctor in relation thereto. The effect of using sections of the definition in questioning a witness is to give him the legal yardstick by which to guide his testimony thus obviating the objection that his testimony is upon a legal conclusion as stressed in Brown v. Mitchell, supra. It seems that subdividing the definition of the term "testamentary capacity" and using the different sections of it as a basis for questions addressed to the expert witness have been upheld in many recent cases. For example, such questions were upheld in Adamson v. Burgle, Tex.Civ. App., 186 S.W.2d 388, and in Welch v. Shoubrouek, by this court, reported in 260 S.W.2d 84 (87). See cases in Note 39, under Sec. 1421, p. 254, Vol. 2, McCormick & Ray, Texas Law of Evidence. See, also, an excellent article by District Judge A. R. Stout on this question in 7 Baylor Law Review, 121 (124–125); and see 23 T.L.R. 120.

The last testimony quoted appearing admissible and no objection having been made thereto, we believe that the error of the trial court in admitting the testimony first set out is harmless. Rule 434, Texas Rules of Civil Procedure.

The trial court's judgment is affirmed.