James D. WILLIFORD et al., Appellants,

v.

F. O. MASTEN, Appellee.

No. 8506.

Court of Civil Appeals of Texas, Amarillo.

March 17, 1975.

Rehearing Denied April 22, 1975.

Rhodes & Doscher, John Allen Chalk, A. L. (Dusty) Rhodes, Abilene, Purvines & Saunders, Panhandle, for appellants.

Spillman & Spillman, Bill Spillman, Wellington, Marshall Sherwood, Panhandle, for appellee.

ELLIS, Chief Justice.

The proponents of an alleged will have brought this appeal from a judgment entered by the District Court of Carson County, Texas, denying their application for the probate of an instrument purporting to be the Last Will and Testament of Mrs. F. O. (Lily B.) Masten, Testatrix. Affirmed.

The original application for probate of the document known as the will of Mrs. Masten, dated August 9, 1965, was submitted to the County Court of Collingsworth County, Texas, and on September 15, 1971, such application for probate was denied. The petitioners, all interested persons and legatees, appealed the decision of the County Court to the District Court of Collingsworth County by means of a writ of certiorari where the cause was tried de novo before a jury. Following two mistrials declared by the judge of the District Court of Collingsworth County because of the inability of the jury in each trial to arrive at a verdict, upon the petitioners' application for change of venue, the third trial of this cause was had in the District Court of Carson County. The petitioners in the cause heard in Carson County, include James D. Williford the nominated and appointed Independent Executor under the purported will, and Highland Church of Christ, Boles Home for Children, Inc., Childrens Home of Lubbock and Family Service Agency, Columbia Christian College, Western Christian College, Lubbock Christian College, York Christian College and Michigan Christian College, which were named as legatees under the will, while the respondent is F. O. Masten, the surviving husband of the testatrix. Two other institutions named as legatees under the purported will were Abilene Christian College and the Tipton Home; however, Abilene Christian College filed a demurrer to the application for writ of certiorari and did not participate in seeking probate of the will, while the Tipton Home, after the first trial, demurred and withdrew its request that the will be admitted to probate.

After both sides had closed their evidence, the petitioners filed their motion for instructed verdict, which was overruled prior to the submission of the cause to the jury. The verdict was returned on March 5, 1974.

In response to Special Issue No. 1 the jury found that Mrs. Masten, at the time of her execution of the instrument in question, was not of sound mind. The jury also found by answers to Special Issues Nos. 2–12 that the named independent executor and the legatees under the will were not in default by failure to submit the document purporting to be the will within four years after the death of Mrs. Masten. Her death occurred on April 9, 1967, and the instrument was not submitted for probate until May 24, 1971.

On March 14, 1974, the trial court entered judgment on the verdict denying the petitioners' application for probate of the purported will and decreed that such instrument be cancelled and held void and of no force and effect. Such judgment was filed on March 21, 1974.

On March 22, 1974, the petitioners filed a Motion for New Trial, setting out therein, among other matters, their complaint that the judgment was entered prior to the petitioners or their attorneys having received respondent's motion for judgment and when petitioners had not been notified or received a copy of the proposed judgment. On the same date, the petitioners filed a Motion to Set Aside the Judgment of the Court and to Enter Judgment Notwithstanding the Verdict, alleging, among other matters, that the judgment was entered prior to the petitioners or their attor-

neys being notified of a Motion for Judgment by the respondent, or without the petitioners or their attorneys being notified and forwarded a copy of the proposed judgment for approval. On April 11, 1974, the petitioners filed their Amended Motion for New Trial, which, among other matters, again set out petitioners' complaint regarding their failure to be furnished copy of the proposed judgment prior to its entry. The trial court entered its order overruling the Amended Motion for New Trial on April 22, 1974. The order overruling the petitioners' Motion to Set Aside the Judgment of the Court and Enter Judgment Notwithstanding the Verdict recited that the matters came to the court's attention on April 22, 1974, and was made and entered on May 2, 1974. The proponents of the will submitted for probate have predicated their appeal on fifteen points of error.

In this case the petitioners had the burden of proving that the testatrix was of sound mind at the time she executed the will in question. The jury answered the "soundness of mind" issue, "She was not of sound mind." By reason of such negative or adverse answer of the jury to the issue upon which the petitioners had the burden of proof, the questions concerning evidence points of error raised by the petitioners-appellants are properly confined to (1) legal sufficiency points by which the appellants challenge the jury's adverse finding on grounds that the evidence "as a matter of law" supports an affirmative answer to the soundness of mind issue, Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361, 362–3 (1960); and (2) factual sufficiency points, regarded in terms of "against the great weight." 4 R. McDonald, Texas Civil Practice In District and County Courts § 18.14 (1971). Also, see Prunty v. Post Oak Bank, 493 S.W.2d 645 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n. r. e.).

By appellee's supplemental brief he contends that appellants' legal sufficiency assignments (points nos. 2, 3, 6 and 8), designated as "no evidence" points are improper and do not invoke the reviewing authority of this court with respect to the negative jury finding to the special issue when the appellant had the burden of proof. In the case of Prunty v. Post Oak Bank, supra, the court stated:

"The 'no evidence' points of error with reference to the jury's failure to find defendant negligent in its conduct are improper and do not invoke our authority to review. A jury's failure to find affirmatively on a special issue merely means the *party proponent failed to meet his burden of proving the fact and evidence is not required to support the negative answer.* C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.Sup. 1966) and Calvert, 'No Evidence' and 'Insufficient Evidence' Points of Error, 38 Tex.L.Rev. 361 (1960)." (emphasis added)

However, the court did recognize that "as a matter of law" and "great weight" points may properly invoke the power of the appellate court to review negative jury findings; and in that particular case wherein the appellant sought a *reversal and remand,* the jury's negative finding properly invoked the court's fact finding powers.

The appellants concede in their reply brief that certain "no evidence" points as asserted in their original brief are not cast in proper terminology and that it would have been proper for appellants to have urged the court to reverse and render based upon their Motions for Instructed Verdict and to Set Aside the Judgment of the Court and Enter Judgment Notwithstanding the Verdict of the Jury for the reasons that appellants carried their burden of proof and that the evidence "as a matter of law" supports an affirmative answer contrary to the jury's negative answer to the "soundness of mind" issue. In this connection, the appellants contend that with respect to points nos. 2 and 6, wherein they urged that the trial court erred in overruling petitioners' Motion for Instruct-

ed Verdict because there was no evidence that the testatrix was of unsound mind on the dates of preparing and executing the will and in overruling petitioners' Motion to Set Aside Judgment of the Court and to Enter Judgment Notwithstanding the Verdict because the judgment entered on the verdict was supported by no evidence of probative force, they had laid the proper procedural predicates to raise legal sufficiency points in this case.

It was stated in Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 361, 362, supra, that:

"The controlling consideration with an appellate court passing on a point of error directed at the state of the evidence is not whether the point uses the preferable, or even the proper, terminology, but is whether the point is based upon and related to a particular procedural step in the trial and appellate process and is a proper predicate for the relief sought."

The appellants insist in their supplemental brief that they have carried their burden of proof and that as a matter of law appellee presented no admissible evidence to support the negative finding; that the legally admissible evidence established conclusively the opposite answer to that given by the jury; and that they prayed for reversal and rendition of the judgment on the grounds that the trial court erred in overruling the above pre-judgment and post-judgment motions which are proper procedural predicates for legal sufficiency points.

From a review of the procedural predicates shown by the record in this case in which the appellants received a negative jury finding on the soundness of mind issue upon which they had the burden of proof, and in view of the predicates laid with respect to the points presented which challenge the court's action in overruling the Motion for Instructed Verdict and the Motion to Set Aside Judgment and Enter Judgment Notwithstanding the Verdict, and the relief of reversal and rendition sought in connection therewith, we have determined to review such points (points nos. 2 and 6) originally stated as "no evidence" points as legal sufficiency assignments for consideration in terms of "as a matter of law" points.

Appellants' points nos. 3 and 8, challenging, in general terms, the trial court's action in rendering judgment for the respondent because there is no evidence to support the jury's negative finding to the soundness of mind issue upon which the appellants had the burden of proof, and in overruling the petitioners' motion for new trial because the judgment entered was supported by no evidence of probative value, are not properly regarded as legal sufficiency points. When the jury failed to find affirmatively on an issue upon which the proponent has the burden of proof, evidence is not required to support the negative answer. C. & R. Transport, Inc. v. Campbell, supra. Since the adverse answer to the issue upon which the petitioners had the burden of proof was not attacked in points nos. 3 or 8 as either a legal sufficiency point of "as a matter of law" (which requires procedural predicates not presented here), or as a factual sufficiency point "against the great weight," we do not consider that these points (nos. 3 and 8), submitted in general terms as "no evidence" points, properly invoke our power to review the negative jury finding on the grounds presented therein. Thus, we shall not further discuss these points, although, as above indicated, we have determined to consider appellants' points nos. 2 and 6 as legal sufficiency assignments in terms of "as a matter of law" points.

The appellants have urged that if it is determined that the judgment should not be reversed and rendered then the judgment should be reversed and remanded on the basis of their factually sufficient assignments submitted in terms of and which we shall review as "great weight" points. In connection with the various points presented for review, consideration will be

given to the appellants' various contentions challenging the rulings of the trial court relevant to the admissibility and competence of certain evidence submitted by the appellee.

In the trial of this cause de novo in the district court the burden of proof was upon the petitioners to show that Mrs. Masten was of sound mind at the time the will was executed. The following issue on soundness of mind and the accompanying definition was submitted to the jury:

## "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that at the time Mrs. F. O. (Lily B.) Masten executed the instrument dated August 9, 1965, which has been offered in evidence, she was of sound mind, as that term is defined below?

"In connection with this Special Issue, you are instructed that the term 'sound mind' means that Mrs. F. O. (Lily B.) Masten at the time of the execution of the Will, must have had sufficient mental ability to understand the business in which she was engaged, the effect of her act in making the will, and the nature and extent of her property; she must have been able to know her next of kin, and the natural objects of her bounty and their claims upon her; and she must have had memory sufficient to collect in her mind the elements of the business about to be transacted, and to hold them long enough to perceive at least their obvious relation to each other, and to be able to form a reasonable judgment as to them.

"Answer, 'She was of sound mind', or 'She was not of sound mind'."

The jury answered: "She was not of sound mind."

■■ There has been consistent recognition and approval of the above definition of sound mind. See Welch v. Shoubrouek, 260 S.W.2d 84, 86 (Tex.Civ.App.—

Beaumont 1953, no writ) on the authority of Morris v. Morris, 279 S.W. 806 (Tex. Comm'n App.1926, jdgmt adopted); Oliver v. Williams, 381 S.W.2d 703 (Tex.Civ. App.—Corpus Christi 1964, no writ); Lindley v. Lindley, 384 S.W.2d 676 (Tex. 1964), and Reynolds v. Park, 485 S.W.2d 807 (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.). The proponents have the burden of proving all of those elements set out in the charge in order to establish that the testatrix was of sound mind at the time of her execution of the instrument in question. See Morris v. Morris, supra; and Welch v. Shoubrouek, supra.

Regarding the legal sufficiency points under consideration, the appellants contend that as a matter of law they carried their burden of proof. The petitioners, as proponents and legatees, called various witnesses who presented testimony expressing opinions that Mrs. Masten was of sound mind when she executed the purported will. These witnesses included the nominated independent executor, representatives of various institutions designated as legatees under the will, other lay witnesses, together with certain medical experts and a clinical psychologist who expressed opinions tending to support the appellants' contentions that the testatrix was of sound mind when she prepared and executed the purported will. The appellants contend that the properly admissible evidence and the evidence having probative value supports as a matter of law an affirmative answer to the soundness of mind issue.

■ At the outset, we point out that the testimony as to mental competency or ability is an expression of opinion whether it be from an expert or from a layman and opinion testimony does not establish any material fact as a matter of law. Estate of James v. Gant, 469 S.W.2d 927 (Tex. Civ.App.—Waco 1971, no writ) and cases cited therein. Also, see Barnes v. City of Hillsboro, 504 S.W.2d 939 (Tex.Civ.App.— Waco 1973, no writ). Further, the non-expert witnesses, provided they know the testatrix and through their acquaintance had

a reasonable opportunity to observe her acts, conduct and characteristics sufficiently to support an opinion or conclusion, may testify as to the mental condition of the testatrix on the occasion in question. See: In Re Hardwicks' Estate, 278 S.W.2d 258 (Tex.Civ.App.—Amarillo 1954, writ ref'd n. r. e.). Such conclusions and opinions may be based upon observations of testatrix's conduct either prior or subsequent to the execution; however, only that evidence of incompetency at other times (other than the date of execution) has probative force which demonstrates that the condition persisted and has some probability of being the same condition which obtained at the time the will was made. Lee v. Lee, 424 S.W.2d 609 (Tex.1968).

■ We recognize that it has been held that there is a difference in the standard for admissibility of testimony of a non-expert opinion witness as to soundness and unsoundness of mind in that generally more detailing of facts is required as a basis for the opinion of unsoundness of mind than that for testimony as to soundness. See: Thornton v. McReynolds, 156 S.W. 1144 (Tex.Civ.App.—Texarkana 1913, writ ref'd); Singleton v. Carmichael, 305 S.W. 2d 379 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.); Meyers v. State, 113 Tex.Cr. R. 26, 19 S.W.2d 317 (1929) and Moeling v. Russell, 483 S.W.2d 21, 23 (Tex.Civ. App.—Tyler 1972, no writ). However, it has been stated in Singleton v. Carmichael, supra:

"The matter of admissibility is largely within the discretion of the trial court and in the absence of abuse of discretion his action will not be disturbed."

Also, see Santos v. Morgan, 195 S.W.2d 927 (Tex.Civ.App.—Austin 1946, writ ref'd n.r.e.).

■ The Texas Supreme Court in Carr v. Radkey, 393 S.W.2d 806, 813 following Brown v. Mitchell, 88 Tex. 350, 31 S.W.

621, 36 L.R.A. 64 (1895) stated the following:

" . . . a witness may not be asked whether a testator had the mental capacity to make and publish a will because, under Brown v. Mitchell, whether a person has mental capacity to execute a will involves a legal definition and a legal test. A witness may be asked, assuming he knows or is a properly qualified expert, whether the testator knew or had the capacity to know the objects of his bounty, the nature of the transaction in which he was engaged, the nature and extent of his estate, and similar questions."

Further, appellants refer to the case of Wilkinson v. Wilkinson, 322 S.W.2d 662 (Tex.Civ.App.—Beaumont 1959, writ dism'd) regarding the method of questioning witnesses with respect to "testamentary capacity," suggesting that questions covering the elements set out in Carr v. Radkey, supra, and including the various elements set out in the court's charge in the instant case be subdivided into the three broad areas. Appellants contend in the instant case that unless each witness presented by the respondent can and does testify to all three required elements in the sound mind definition of Carr v. Radkey, then no evidence as to unsoundness of mind of testatrix has been adduced. We do not agree with this construction of the holding made in Carr v. Radkey, supra. Neither do we regard the suggestions in Wilkinson v. Wilkinson, supra, concerning the proper types of questions of witnesses as to the essential elements of the definition of sound mind as requiring each witness to testify to each and every element. Even in Carr, various witnesses were permitted to testify as to various and separate aspects of the test, but each witness was not necessarily required to testify as to all. For instance, one witness was permitted to testify that the testatrix was not mentally capable of knowing and understanding the nature of and effect of her acts. We note that in

*Carr* the court significantly stated the distinguishable features between permissible and nonpermissible testimony:

"It is our conclusion that the jury in cases such as these should be given all relevant and competent testimony with regard to the mental condition of the testatrix; and in our opinion, competent evidence about her mental condition and mental ability or lack of it which does not involve legal definitions, legal tests, or pure questions of law should be admitted."

Thus, the test under *Carr* is whether the testimony is bearing on mental condition rather than legal conclusions.

Among the witnesses presented by the appellee was Dr. Charles B. Jones, a medical doctor, who had known the testatrix since 1937 or 1938 and had served as her physician in a doctor-patient relationship since 1955. He had treated her in his office, at her home and while she was in the hospital on various occasions. He observed her during all of these visits, including her complaints and demeanor. He stated that in 1961 she was admitted to the hospital for coronary artery disease; that the primary cause of her death was cerebral vascular bleedings which had been occurring for two years prior to her death in 1971; and that the secondary cause of death was general arteriosclerosis which had been in existence for almost fifteen years. He testified that he observed her in 1964, and that in 1964 he did not think she knew the extent of her property, or if she had been engaged in the making of a will she would not have known the business in which she was engaged at that time. Further, he stated that he observed and talked with her in February, 1966, and it was his opinion that she did not know the extent of her property or if she were engaged in making a will at that time she would not have known the business in which she was engaged. Based upon Doctor Jones' observation of Mrs. Masten as a patient, he testified that he did not think that on August 9, 1965 (the date of her execution of the purported will) she would have known the business in which she was engaged if she had been making a will; and that on such date she would not have known the nature and extent of her property. He stated that he thought she knew her husband and sisters (the closest members of her family and relatives).

The appellants complain that Doctor Jones' diagnosis that the testatrix had a condition of drug narcosis was too remote, unsupported by other testimony and prejudicial. Also, they complain that a subsequent diagnosis indicating that a hemorrhage of the patient's leg resulted from the taking of drugs or medication was not proper on the grounds that it was an unsupported conclusion. In the absence of a motion that such evidence be disregarded by the jury, and when considered in connection with other testimony given by the doctor, we find that appellants' complaints regarding such evidence present no reversible error.

Dr. Ray L. Ziegler, a physician, presented testimony that he first saw Mrs. Masten on February 7, 1964, and treated her for at least thirty-two times. He treated her on May 25, 1965, and on August 13, 1965, i.e. a few weeks before and four days after her signing of the instrument. Also, he stated that on August 13, 1965, she was worse than at other times and complained about not being able to remember, and that her head felt so heavy that she was about to fall to the floor. He treated her again in September, 1965. He further testified that she complained of dizziness, heavy headedness, not being able to remember and that hardening of the arteries hindered her capabilities. He stated that she was ill enough when she went to the hospital in September, 1965, he would not have relied upon her in signing an operation permit. Further, he testified to the effect that he would not have relied upon her business judgment; that he would not have wanted to enter into any sort of business affairs with her; and that if she signed a will he

would not be willing to say that she would know the full consequences of such action. He did give testimony to the effect that the testatrix would know her family.

The appellants complained of the admission of certain deposition testimony of Doctor Ziegler which appellants sought to have suppressed as being unresponsive and as constituting a legal conclusion. However, it appears from the record that although petitioners' motion to suppress certain matters in the deposition was originally granted by the court, such matters were subsequently admitted into evidence since the petitioners had waived such motion by reading into evidence the recross examination with respect to matters originally suppressed, and since the recross examination referred back to questions included in the motion to suppress. Further, the court, within its reasonable discretion, allowed such testimony to be presented as expert testimony. Also, it is noted such testimony was given in response to questions propounded by petitioners' counsel.

W. C. Lewis, a nephew of Mrs. Masten, who had observed her physical condition and demeanor in 1965, testified that she complained of not being able to remember; that she talked thick tongued and would change the subject in the middle of a sentence; and that she did not recognize him in September, 1965. In response to questions concerning her discussion as to the making of a will, he testified that in the summer of 1966, she stated that she did not have a will and that she would not make one unless her husband had it prepared and had signed it and then she would sign under his name. He stated that based upon his observations, it was his opinion that on August 9, 1965, she would not have known the business in which she was engaged if she had executed a will and that she would not have known the nature and extent of her property. In response to a question as to whether on such date she would have known her relatives, he stated that in his opinion: "There is a possibility that she

would have known some of them. Some of them she would not have."

A nurse, Willie B. Harwell, who had visited Mrs. Masten two or three times a week for several years, and had given her Vitamin B12 injections and observed her physical condition in the summer of 1965, testified that on more than one occasion during the summer of 1965, Mrs. Masten got lost, failed to recognize her and that she had to drive Mrs. Masten to her home. Also, she testified that she did not think Mrs. Masten knew the extent of her property and the business in which she was engaged in making a will. This opinion was based upon her observation of Mrs. Masten during the summer of 1965.

Dr. Don Morris, the chancellor of Abilene Christian College, testified that he had visited Mrs. Masten several times. He saw her in December, 1964, in the company of B. Sherrod. Also, he saw her in September, 1965, and observed her physical condition and general demeanor; that she became confused in her talk and would be corrected by the lady staying with her; and that it was his opinion, based upon a statement she made to him, and from his personal observations, before and after August, 1965, she did not know the nature and extent of her property, the business in which she was engaged in making a will, and that he thought she would know her husband and sisters.

Mrs. O. R. Spear testified that while she was working for Doctor Wattam, a medical doctor in Wellington, Texas, she first became acquainted with Mrs. Masten when she came to see the doctor at his office. After she quit working for Doctor Wattam about 1963, she was associated with Mrs. Masten up until her death. She worked for Mrs. Masten, drove her car for her and occasionally spent the night with her when Mrs. Masten was ill and was around her on various occasions. Based upon her observations while visiting in her home and from what Mrs. Masten told her, Mrs. Spear expressed the opinion that she did

not know the nature and extent of her property on August 9, 1965, or the nature of transactions in which she was engaged in making a will. She stated that Mrs. Masten told her that she didn't know anything about business; that it was a man's place to "tend to the business" and that she was always going to let Mr. Masten attend to such matters.

Bill Tarter, a neighbor, who lived across the street from Mrs. Masten and had known her for many years, worked for her and saw her about three times a week and talked with her at various times from 1953 until the time of her death, stated that based upon his observations and visits with Mrs. Masten he did not think she knew the extent and nature of her property; and that on August 9, 1965, she would not have known the nature of the transaction in which she was engaged if she were making a will. Also, he stated that somewhere around late 1966 she didn't recognize her niece, Mayfair, and "a year or two in there, she didn't recognize hardly anybody, three or four years."

Miss Lena Ball, a neighbor who had known Mrs. Masten since 1920, visited with her during the years nearly every week and observed her general demeanor. Based upon her observation of Mrs. Masten in the year of 1965, she expressed the opinion that Mrs. Masten did not know the nature and extent of her property. Miss Ball further stated in this connection that the basis of such opinion was that Mrs. Masten "just didn't have any interest in what they had." Miss Ball further expressed the opinion, based upon her observation of Mrs. Masten, that she would not at that time have known the business in which she was engaged if she made a will. Finally, over objection of appellants' counsel, the testimony of Miss Ball was admitted to the effect that on August 9, 1965, Mrs. Masten did not know or have the capacity to know the objects of her bounty, the nature of the transaction in which she

was engaged, and the nature and extent of her estate, and who her relatives were. It is here noted that Miss Ball had previously given separate answers to the questions concerning her lack of knowledge of the nature and extent of her property and as to her lack of knowledge of the nature of the business in which she was engaged if she made a will. Thus, the latter expression of opinion containing three elements including "who her relatives were," was also a restatement of her separate opinions previously given as to Mrs. Masten's lack of knowledge concerning the elements of "the nature and extent of her property" and "the nature of the business in which she was engaged if she made a will."

Appellants contend that all of the testimony elicited by the respondent regarding unsoundness of mind of the testatrix was inadmissible for the reason that the lay witnesses who testified to the unsoundness of mind gave no bases with respect to factual details for their lay opinion testimony concerning unsoundness of mind as required by law. Also, appellants contend that the trial court erred in admitting testimony of all the respondent's witnesses regarding unsoundness of mind of the testatrix for the reason no proper predicate was laid either before or after such witnesses gave their testimony with respect to the unsoundness of mind. Further, complaints were made that the times stated in the testimony did not relate to the specific date of the execution of the will.

■ Appellant further complains that there was fundamental error committed in that there was no relief to offer petitioners for repeated conclusions ruled inadmissible but overheard by the trial jury. We have reviewed the record from this standpoint and find that the trial court gave adequate instructions to the jury not to consider the evidence deemed inadmissible, and in the light of the whole record we find no showing of prejudice or unfairness, which would be calculated to or which probably

affected the jury's verdict. Further, we note that petitioners made no motion for mistrial with respect to any particular situation on the basis of the claimed prejudice by reason of improper conclusions having been given by a witness and overheard by jurors. The petitioners' complaints regarding such alleged fundamental error are overruled.

■ The appellants complain that they were prevented from having the opportunity to timely file their motion to enter judgment notwithstanding the verdict of the jury because of the failure of both the trial judge and counsel for respondent to provide a copy of the proposed judgment prior to entry of the judgment. Appellants' counsel state in their brief that it was their understanding that a form of the proposed judgment, as prepared by counsel for the appellee, would be submitted to them prior to entry of judgment, and therefore appellants' counsel delayed moving for Judgment Non Obstante Veredicto awaiting the form of the proposed judgment. Appellants contend that their first notice received regarding the judgment was a copy of the judgment as signed and entered by the trial judge and that such action worked an unfairness and inequity upon the appellants. After entry of the judgment, the appellants filed their Motion to Set Aside Judgment of the Court and for Judgment Notwithstanding the Verdict. The record shows that the court considered the Motion for Judgment Notwithstanding the Verdict even though it was filed after the entry of the judgment. Thus, it does not appear that such motion, although filed after the entry of judgment, was disregarded. See: R. McDonald, supra § 17.-32, at 211–212 and cases cited therein. Also, such Motions along with the Motion for Instructed Verdict, and the overruling thereof, have been herein regarded as procedural predicates with respect to invoking appellate review of appellants' legal sufficiency assignments of "as a matter of law" points. Thus, appellants' complaint regarding the alleged inequity and unfairness with respect to the entry of judgment prior to their examination of the proposed judgment is overruled.

■ From a review of the respondent's evidence admitted by the trial court, we have concluded that the trial court did not abuse its discretion in admitting such evidence; that there was adequate detailing of the factual bases for the opinions expressed by lay witnesses regarding unsoundness of mind and that the evidence was not incompetent, and its weight and credibility were matters for determination by the jury. We further recognize that, as previously set out, opinion evidence whether from an expert or lay witness does not establish any material fact as a matter of law. Jones v. Gant, supra. In view of the foregoing, we hold that the fact as to whether Mrs. Masten was of sound mind on the day she executed the purported will was not conclusively established. Thus, as to the vital matter of soundness of mind a fact issue was raised. Accordingly, the "matter of law" points are overruled.

■ The appellants, in the alternative, contend that the jury's negative finding on the soundness of mind issue was against the great weight and preponderance of the evidence. The appellants presented various witnesses who gave testimony in support of an affirmative finding on the soundness of mind issue. Likewise, the appellees submitted the above described evidence which we have held to be admissible and competent in support of a conclusion that the testatrix was not of sound mind, as defined by the court, at the time she executed the instrument in question. A review of all the evidence reveals that the issue of soundness of mind was vigorously contested and there was competent evidence heard from both sides. The proponents of the will presented many witnesses who testified as to the soundness of mind of the testatrix on the basis of their obser-

vations and contacts with her. Some of appellants' witnesses testified as to their contacts with and impressions of the testatrix on the day before as well as the day of the execution of the instrument. The respondents presented the testimony of physicians who attended the testatrix over a considerable period of time, both before and after the date of the execution of the purported will, and, upon the basis of their personal observations and inferences therefrom, they expressed opinions to the effect that she was not of sound mind on the date she executed the instrument. There is also testimony of lay witnesses based upon their personal observations of her conduct and demeanor both prior and subsequent to the date of execution of the instrument, and we consider that the factual bases were in sufficient detail to permit the admission of their opinion that the testatrix was of unsound mind for the jury's consideration. The jury as the trier of the facts is the sole judge of the credibility of the witnesses and the weight to be given their testimony, not being bound by the testimony of any one witness, but it is entitled to accept all, part or none thereof, or it could accept part of the testimony or part of the testimony of one witness and part of another, or draw its deductions from all the evidence. Farr v. Bell, 460 S.W.2d 431 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r.e.), and authorities cited therein. From our consideration of all the evidence as required with respect to the "great weight" points presented, we have concluded and so hold that the jury's negative answer on the soundness of mind issue is not against the great weight and preponderance of the evidence.

. We have carefully reviewed and considered the entire appellate record and the various aspects of all the points of error presented. We find no reversible error and overrule all of the appellants' points properly invoking our appellate review. Accordingly, the judgment of the trial court is affirmed.