**KIRBY LUMBER CORPORATION, Appellant,**

v.

**Joe Nathan TAYLOR et al., Appellees.**

No. 994.

Court of Civil Appeals of Texas, Tyler.

April 28, 1977.

Joe G. Roady, Cox, Pakenham & Roady, Houston, for appellant.

Tom P. Senff, Nacogdoches, Sid S. Stover, Seale & Stover, Jasper, for appellees.

McKAY, Justice.

This case involves a suit by plaintiff-appellant, Kirby Lumber Corporation (Kirby), against defendant-appellees, Joe Nathan Taylor (Taylor), and his wife, Lilly Mae Taylor, and the San Augustine Lumber Company (San Augustine) for conversion of timber. The suit, nominally one in trespass to try title, asserted the ownership by Kirby of pine timber cut from the Gallender and Bruce Surveys in San Augustine County by Taylor and his son Herman, such cutting allegedly occurring during the period September 1, 1971, to April 4, 1972, without the authority of Kirby, and sold by Taylor to San Augustine. The legal theories on which the liabilities were asserted were trespass and conversion on the part of Taylor and conversion on the part of San Augustine. Trial was to a jury on the issues of liability for conversion and damages. The jury found in special issues 1 and 4[1] that the Taylors did not cut and remove

---

[1.] "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that defendant Jonathan Taylor, for himself and for his wife, defendant Lilly Mae Taylor, cut and removed pine saw timber from the Gallender and Bruce Surveys in San Augustine County, Texas during the period September 1, 1971 to April 4, 1972, inclusive, with the intent of converting the same to his, or their, own use?

"Answer 'We do' or 'We do not'.

"Answer: 'We do not.'"

"SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that defendant San Augustine Lumber Co., during the period September 1, 1971 to

pine timber from the Gallender and Bruce Surveys and that San Augustine did not receive the same from Taylor. Judgment was rendered that Kirby take nothing as to money damages. This is the only part of the judgment that is questioned on this appeal.

Appellant brings five points of error. Points one and two complain that the court erred in entering a take nothing judgment with respect to the liability of the Taylors and San Augustine for conversion, "the evidence being undisputed that Joe Nathan Taylor cut and removed pine saw timber from the Gallender and Bruce Surveys" and "cut and removed pine saw timber from the Gallender and Bruce Surveys and sold the same to San Augustine Lumber Company." Point three complains that the trial court erred in not giving effect to certain admissions of Taylor, which will be discussed at a later point in this opinion. Points four and five complain that the jury findings on special issues one and four were "so clearly against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust."

The land in question is located in San Augustine County, southwest of the city of San Augustine.[2] The Gallender and Bruce Surveys are located near what is referred to as the Norwood Community, to the north and west from the intersection of State Highways 103 and 147. Farm Road 1992 is located in this area, running north from Highway 103 to the west of Highway 147, and then turning east, near the southeast corner of the Gallender Survey to intersect Highway 147. The surveys, depicted on the inserted map taken from Plaintiff's Exhibit 27, are located in the area where Farm Road 1992 curves to turn east. Most of the testimony centered on Taylor's activities

near the southeast corner of the Gallender Survey, where as the testimony established, there was an old automobile body and, just to its north, a large pine tree with a red band painted around it. Most of the southern boundary of the Gallender Survey adjoins U. S. Forest Service lands in the Charity Sanders Survey, and in the Blount Survey to the west.

The evidence as to Taylor's activities on or near the land was very vague and uncertain. John Kent and Byron Fredieu, two employees of Kirby, testified as to meetings with Taylor on or near the Gallender Survey in the spring of 1972. According to Kent, on March 28, 1972, he found an A-frame loader near the northwest corner of the Gallender Survey, went to Taylor's home, and inquired of Taylor about the loader. Taylor denied that the loader was his. The following day Kent found Taylor on land north of the Gallender Survey not belonging to Kirby and inquired as to whether the loader was Taylor's. According to Kent, Taylor told Kent that this loader was his and that he had cut timber "in that area"; however, Taylor testified that Kent had asked about a black loader the first time and a maroon or purple loader the second. Kent also testified that he didn't think any timber had been cut in the area of the loader. Fredieu testified of a meeting with Taylor in April of 1972 just north of the south line of the Gallender Survey. He indicated he was stopped by Taylor, who was sitting in his pulpwood truck, upon attempting to enter the Gallender Survey. At this meeting Taylor claimed the land was his and wanted to know, among other things, why the Kirby employees were marking stumps on the land. Fredieu told him that the land belonged to Kirby and the stumps were being

April 4, 1972, inclusive, received from defendant Jonathan Taylor and from Herman Taylor and converted to its own use and benefit pine saw timber cut and removed from the Gallender and Bruce surveys in San Augustine County, Texas?

"Answer 'We do' or 'We do not'.
"Answer: 'We do not.' "

2. See map attached hereto as page 132.

marked to determine the extent of unauthorized cutting.

Two residents of the area, Prentis Sowell and Bernard Watson, also testified as to the activities of Taylor in that area. Sowell lived in a house near the intersection of Farm Road 1992 and a woods road which came in a southward direction through the center of the Gallender Survey and the Charity Sanders Survey before running into 1992. He testified that he saw Taylor hauling logs out of the Gallender Survey past his house down the woods road "on several different occasions" for "more than a month" in late 1971 or early 1972. However, he said that he "did not see [Taylor and his son, Herman] cut a tree" and that he did not know from which survey the logs had been cut. Watson lived in a house across Farm Road 1992 from the southeast corner of the Gallender Survey. He testified that he had seen Taylor "stuck with a load of logs" on the land northwest of the car body and the red-painted tree. He indicated that he "watched them try to get out and me and his wife stood there and talked." When asked whether he had seen anyone cutting timber "north of that particular area," he indicated that he had seen "a colored fellow" cutting timber "within three hundred yards . . . but I didn't talk to him." Later on cross-examination Watson admitted that he didn't know where the logs Taylor had been hauling had come from. Edward Sheffield, an employee of the U. S. Forest Service, testified that at one point, upon request of a Mr. Atchley of San Augustine, he had walked the government line (between the Gallender and the Charity Sanders Surveys) with Taylor and that Taylor had expressed an intention to cut timber in the Gallender Survey.

As to Taylor's own testimony concerning where he had cut the timber, it is apparent from the record that he either (1) was confused as to the actual location or (2) cut timber in several different locations. He testified that he had cut wood "to the west and southwest" of the car body, pointing to the Charity Sanders Survey south of the Gallender Survey. In regard to his deposition, which was not introduced into evidence, Taylor testified as to the following:

"Q All right, sir. Now, in your deposition in September 1972, didn't you testify you were cutting slightly northwest of the car body and the marked tree?

"A Yes, sir.

"Q Northwest, not southwest? Isn't that accurate?

"A From where the car body and the ring around the tree?

"Q Yes, sir?

"A I was cutting up the line to a government corner, ducked and went due north or northeast a short ways, then it went in the same direction to a tram road, and I was hauling, coming out of that tram road to a main dirt road, coming back to the highway.

"Q The question was, Mr. Taylor, you were cutting north and west of those car bodies and that tree? And not southwest? Do you confirm or deny what I just said? You were cutting northwest of it, weren't you?

"A Either—In the direction the lines was running, I was cutting inside of this L."

He further testified:

"Q All right. Now, you were cutting just to the north of that Forest Service line, weren't you?

"A Yes, sir.

"Q About a quarter of a mile off farm road 1992 in that area?

"A Short quarter, if it was."

He went on to say when asked had he cut timber about "half or three quarters of a mile" to the north of the south boundary of

the Gallender Survey that, "Well, I did cut that." However, Taylor testified that he had cut the wood on his land and that such was in the Charity Sanders Survey.

The testimony of Taylor's wife, Lillie Mae, was slightly less confusing. She initially testified that the cutting took place to the southwest of the car body, and when asked if the cutting took place "north toward San Augustine of that Forest Service line," she replied, "No sir. I don't think." She further testified that any timber she may have marked (for Joe Nathan and Herman to cut) was south of Sowell's house and southwest of Watson's house, which would put the location on the Charity Sanders Survey.

In regard to the question of whether Taylor sold the pine logs cut in the fall of 1971 and the spring of 1972 to San Augustine, Taylor testified, "All the hauling I done I didn't send to San Augustine Lumber Company because I cut at times, I move out, and I come back and out again." Counsel for Kirby sought to impeach Taylor by his deposition, not introduced in evidence, wherein Taylor apparently indicated that he had sold all the timber cut out of this area, in that particular period of time, to San Augustine. Later, when asked whether "all of the pine saw logs" that he cut "from this area right here" (with no reference to the map in the record) were sold to San Augustine, he replied, "Yes, sir". Taylor also testified that he carried some hardwood cut out of the area to Center. Kent, the Kirby employee, testified that he checked with "several other mills" in the area, and "none of them took any timber from Joe Nathan except Mr. Gillespie" who apparently owned a lumber mill other than San Augustine's.

After viewing all of the evidence in the record, it cannot be said that such evidence conclusively establishes that Taylor "cut and removed pine saw timber from the Gallender and Bruce Surveys" nor that Taylor "cut and removed pine saw timber from the Gallender and Bruce Surveys and

sold the same to San Augustine Lumber Company" as urged in appellant's first two points of error. Although Taylor told Kent that he had cut timber in the "area" of the loader, according to Kent no wood had been cut around the loader. Other witnesses testified that they had seen Taylor haul logs off of the Gallender Survey although they couldn't say from where the logs came. Although Taylor testified that he was to the north and northwest of the car body, which would place him on the Gallender Survey, he also testified that the cutting occurred to the west and southwest which would place him on the Charity Sanders Survey. As to the sale of the logs, Taylor indicated that he had sold some logs in Center and some to a Mr. Gillespie. Moreover, since it was not proven without dispute that Taylor cut the timber from Kirby's land, it cannot be said that he sold such timber to San Augustine. We do not believe that the assertion that Taylor cut timber off of the Gallender Survey, or that he sold the same to San Augustine, is without dispute. The evidence shows a series of suspicious circumstances but no direct proof of the questions at hand. Moreover, special issues one and four inquired as to whether Taylor cut timber from the "Gallender *and* Bruce Surveys" [emphasis added] so that it was necessary for the jury to find that Taylor had cut trees from both surveys. There is very little evidence at all that Taylor cut any timber from the Bruce Survey; therefore, we cannot agree that it was conclusively established that Taylor had cut and removed timber from both surveys. Points of error one and two are overruled.

Point three complains that "The Court erred in failing to give effect to the following admissions of Joe Nathan Taylor:

"a. that he cut the timber where his loader equipment was located, shown without question to be on the Gallender;

"b. that he cut the timber at a point one-half to three-quarters of a mile north from point A on Plaintiff's Exhibit 27 [the southeast corner of

the Gallender Survey] which unquestionably and without dispute places him and his timber cutting on the Bruce Survey;

"c. the admission, to the Forest Service employee Sheffield, that he had cut the timber on the Gallender and was going to cut such timber thereafter;

"d. that he was cutting a quarter of a mile off Farm Road 1992, which places his cutting squarely on the Gallender;

"e. that he cut timber near an abandoned tram, which was shown on Plaintiff's 27 to cross both the Gallender and Bruce Surveys;

"f. that all of the pine sawtimber that he cut from the land in controversy was taken and sold to San Augustine Lumber Company;

and, based upon such failure, in entering a take nothing judgment with respect to the liability of all Defendants for conversion, the effect of such admissions being to establish conclusively and as a matter of law the liability of both Defendants for conversion."

■ We do not agree with Kirby that the trial court would be bound by these so-called "admissions". The statements concerning the loader equipment and the abandoned tram only said that he was in the vicinity of such; the testimony did not purport to indicate his exact location. The loader was shown to be located near the boundary line of the Gallender and the J. C. Thornton Surveys (not owned by Kirby); likewise, the tram was shown to cross the J. C. Thornton Survey as well as the Gallender and Bruce Surveys, so that Taylor may well have not been on Kirby's land. The statements by Taylor that he was a "short quarter" of a mile off Farm Road 1992 and "half or three quarters" of a mile north from point A are merely estimates of distance and direction and are not conclusive of his exact location. Sheffield, a Forest

Service employee, only testified that he had walked the government line (the outside edge of the Gallender Survey) with Taylor and Taylor told Sheffield that he was going to "cut that stuff," apparently meaning the Gallender Survey, only expressing an intention to cut the timber and not an admission that he had already done so. Taylor's statement that he had sold all of the timber cut from the land in controversy to San Augustine was contained in his deposition. Such was only used for impeachment purposes and, not having been introduced into evidence, would have weight only on the question of Taylor's credibility. The jury has exclusive power to determine the credibility of the witnesses and the weight to be given their testimony. *State Highway Department of Texas v. Maris*, 532 S.W.2d 690, 693 (Tex.Civ.App.—Texarkana 1976, no writ); *Williford v. Masten*, 521 S.W.2d 878, 890 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.). We hold that the statements in question were not "admissions" conclusive as to the question of Taylor's and San Augustine's liability; therefore, the questions of whether Taylor cut timber off the land in question and sold the same to San Augustine were questions of fact for the jury. Point three is overruled.

■ Under its fourth and fifth points appellant urges that the trial court erred in entering a take nothing judgment on the question of liability for conversion, the jury's answers to special issues number one and four being so clearly against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. After a review of the entire record and after having weighed and balanced all the evidence, both that in favor and against the verdict and judgment, we are of the opinion that we would not be justified in concluding the finding of the jury in regard to special issues one and four was so clearly against the overwhelming weight and preponderance of the evidence as to be mani-

festly wrong and unjust. Points four and five are overruled.

The judgment of the trial court is affirmed.