**Travis GOREE, Appellant,**

v.

**D. C. CARNES, Appellee.**

No. 16658.

Court of Appeals of Texas,
San Antonio.

Oct. 7, 1981.

Rehearing Denied Nov. 4, 1981.

James G. Murry, San Antonio, for appellant.

George Spencer, San Antonio, W. A. Kessler, Uvalde, for appellee.

## OPINION

Before CANTU, KLINGEMAN and CLARK, JJ.

CANTU, Justice.

This is an appeal from a take-nothing judgment rendered notwithstanding the special issue findings of the jury on one or more special issues in an action for slander.

Travis Goree sued D. C. Carnes, a Uvalde, Texas, farmer, cotton gin operator, Director of the First State Bank of Uvalde and member of the bank's loan review committee, alleging that Carnes, while sitting as a member of the bank's loan review committee, had maliciously uttered false and slanderous statements against him for which he was entitled to recover actual as well as exemplary damages.

D. C. Carnes answered by general denial and special defenses that such statements were either true or were conditionally privileged.

The case was tried to a jury. The Court submitted the case on special issues, and in response thereto the jury found that:

(1) D. C. Carnes had uttered a slanderous statement to all the members of the loan review committee of the bank present at the meeting on October 13, 1977;

(2) D. C. Carnes had not uttered a slanderous statement to two officers and directors of the bank on October 12, 1977;

(3) D. C. Carnes had not uttered the slanderous statement to the members of the loan review committee of the bank with malice.

(4) Travis Goree had sustained damages in the amount of $23,000.00 for past mental suffering, anguish, humiliation and embarrassment.

Appellant Goree filed a motion to disregard the jury's finding of no malice and to enter judgment upon the remaining verdict. Appellee Carnes filed a motion for judgment upon the jury's finding of no malice, notwithstanding the special issue findings of the jury on the remaining issues. The trial court granted appellee Carnes' motion and rendered judgment that Goree take nothing against Carnes. We affirm.

Appellant assails the judgment upon the contentions that:

(1) The jury found that appellee uttered statements against appellant that were slanderous *per se*, and which had resulted in

damages to appellant, without being required to find as a fact issue that the statements uttered were conditionally privileged;

(2) There was no evidence to support a finding that appellee had a conditional or qualified privilege to make the slanderous remarks; and

(3) There was insufficient evidence to support a finding that appellee had a conditional or qualified privilege to make the slanderous remarks.

Appellant further complains that the trial court was without authority to disregard the jury answers finding slander and resulting damages, and that the trial court should have granted judgment for appellant based upon these answers without regard to the finding of no malice.

Appellee by cross-points contends that there is no evidence to support the jury's finding of a slanderous utterance, or that the evidence is insufficient to support the jury's finding of a slanderous utterance.

Rule 300, Texas Rules of Civil Procedure, requires that "[w]here a special verdict is rendered, or the conclusions of fact found by the judge are separately stated, the court shall render judgment thereon unless set aside or a new trial is granted, or judgment is rendered notwithstanding verdict or jury finding under these rules."

Rule 301, Texas Rules of Civil Procedure, which governs judgments non obstante veredicto and the disregarding of special issue jury findings, provides that "upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the Court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence."

In determining that there is no evidence to support a jury finding, the court must consider the evidence in the light most favorable to the finding, considering only the evidence and inferences which support the finding and rejecting the evidence and inferences contrary to the finding. *Camp-*

*bell v. Northwestern National Life Insurance Co.,* 573 S.W.2d 496 (Tex.1978); *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263 (Tex.1974).

With these rules in mind we have carefully examined the testimony adduced before the jury relating to each special issue submitted and have concluded that there is some evidence of probative force beyond a mere scintilla to support the jury's answer to each special issue.

The record reflects that appellant Goree moved from Plainview, Texas, to Uvalde, Texas, sometime in 1971 and went into the business of custom farming, as well as farming on his own upon leased property, in the Uvalde area. During the years 1972 through 1977, appellant established a line of credit with the First State Bank of Uvalde, Texas, to finance his farming operations. Appellant's excellent repayment history resulted in his line of credit being extended to $206,000.00 by the year 1977. His reputation for truthfulness and fair dealing within the Uvalde community was excellent prior to the date of the utterances made the basis of this lawsuit.

In return for the credit being extended by the bank, appellant was required to pledge to the bank as collateral the cotton crop being grown for himself, as well as his farm equipment and implements.

During 1977, appellant Goree was still engaged in custom farming and farming for himself. His principal crop was cotton.

The year 1977 turned out to be an exceptionally difficult and dry year for farmers in the Uvalde area, and by the end of the cotton season it became evident to appellant that the return on his crops would not enable him to meet his obligations on his note with the bank.

In early October, 1977, appellant informed the bank Vice President, who was also his loan officer, about his dilemma.

On October 13, 1977, at a meeting of the bank's loan review committee, a number of loans were brought up for consideration, including appellant's. The loans reviewed were loans in excess of $100,000.00, and the

review arose in part from the difficult conditions being experienced by farmers in the area generally.

Among the loans reviewed was one to Uvalde Custom Farming, Inc., which was guaranteed by appellant individually and as a controlling shareholder.

Before the loan review committee meeting of October 13, 1977, appellant had been informed, and he had in turn informed the bank, that Caney Valley Cotton Company, a buyer of his mortgaged cotton, was withholding certain payments due him.

At the loan review committee meeting, while discussing the loan to Uvalde Custom Farming, Inc., appellee Carnes stated to the other members present that he had received information that *appellant might be ginning cotton out of the Uvalde area, and that the bank should investigate to determine if the proceeds from all of appellant's cotton sales were being turned in to the bank.*

Appellant contends that these statements impute to him the commission of a crime and, as such, form the basis of his action for slander. After these remarks were made by appellee the bank called in its loan, collected and sold at auction all of the equipment held by the bank as collateral, and refused to extend further credit to appellant except for a small crop loan. It is undisputed that no evidence existed that appellant was committing or had ever committed an illegal act with regard to his obligations to the bank.

Appellant's position is that the remarks complained of amounted to an accusation that he was converting the proceeds from the sale of mortgaged cotton without accounting to the bank, a violation of § 32.33 of the Texas Penal Code.[1]

Lewis E. Bracy, Jr., President of the First State Bank of Uvalde, admitted that Carnes' remarks did cast suspicion upon appellant.

All other witnesses denied interpreting the remarks as in any manner imputing to appellant the commission of a crime. Without exception, all testified that they understood appellee's remarks to convey a concern about the bank's interest in mortgaged property and the possible need for investigation.

Appellant argues that as a consequence of appellee's remarks to the loan review committee, his ability to maintain an active credit line with the bank was nullified and his farming operations were totally curtailed from 1978 on. We believe that the admission of the bank president that suspicion was cast upon appellant by appellee's remarks, taken together with the manner in which liquidation was accomplished and other circumstances surrounding the handling of appellant's accounts, justifies the jury's finding on Special Issue No. 2.

The jury, by its answer to Special Issue No. 2, answered "we do" to the following questions:

Do you find from a preponderance of the evidence that on or about October 13, 1977, D. C. Carnes stated to all members

1. § 32.33 Vernon's Annotated Texas Penal Code (1974) prior to being amended in 1979 provided:
 (a) For purposes of this section:
 (1) 'Remove' means transport, without the effective consent of the secured party, from the state in which the property was located when the security interest or lien attached.
 (2) 'Security interest' means an interest in personal property or fixtures that secures payment or performance of an obligation.
 (b) A person who has signed a security agreement creating a security interest in property or a mortgage or deed of trust creating a lien on property commits an offense if, with intent to hinder enforcement of that interest or lien, he destroys, removes, conceals, encum-

bers, transfers, or otherwise harms or reduces the value of the property.
 (c) For purposes of this section, a person is presumed to have intended to hinder enforcement of the security interest or lien if, when any part of the debt secured by the security interest or lien was due, he failed:
 (1) to pay the part then due; and
 (2) if the secured party had made demand, to deliver possession of the secured property to the secured party.
 (d) Except as provided in Subsection (e) of this section, an offense under this section is a Class A misdemeanor.
 (e) If the actor removes the property, the offense is a felony of third degree.

of the loan review committee of the First State Bank of Uvalde, Texas, present at its meeting on October 13, 1977, that Travis Goree had been and was selling cotton which he had grown and mortgaged to the First State Bank, without permission of the First State Bank and keeping the proceeds of such sale for his own use, without any payment to that bank?

By its answer to Special Issue No. 3 the jury found that such statement was not made with malice.

The jury further found, in response to Special Issue No. 4, that the sum of $23,-000.00 would reasonably compensate appellant for mental suffering or anguish, humiliation and embarrassment in the past resulting from the words uttered by appellee.

No special issue as to conditional privilege was requested of the trial court, and accordingly, the jury was not charged thereon.[2]

■ We think that in any event, under the facts, the trial court was not obligated to submit the issue of conditional or qualified privilege to the jury, inasmuch as no real dispute existed regarding the facts and circumstances surrounding the uttering of the remarks. *Fitzjarrald v. Panhandle Pub. Co., Inc.*, 149 Tex. 87, 228 S.W.2d 499 (1950); *Root v. Republic National Bank of Dallas*, 337 S.W.2d 709 (Tex.Civ.App.—Texarkana 1960, no writ).

■ Appellant's own pleadings sufficiently disclose the existence of a privileged occasion. *Cf. Snider v. Leatherwood*, 49 S.W.2d 1107 (Tex.Civ.App.—Eastland 1932, writ dism'd w. o. j.).

We are convinced the issue of conditional or qualified privilege was for the court to resolve as a pure question of law. *Fitzjarrald v. Panhandle Pub. Co., Inc.*, 149 Tex. 87, 228 S.W.2d 499 (1950); *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909 (1942); *Cotulla v. Kerr*, 74 Tex. 89, 11 S.W. 1058 (1889). See also, *Johns v.*

*Associated Aviation Underwriters*, 203 F.2d 208 (5th Cir. 1953); *Borden, Inc. v. Wallace*, 570 S.W.2d 445 (Tex.Civ.App.—El Paso 1978, writ dism'd); *Mayfield v. Gleichert*, 484 S.W.2d 619 (Tex.Civ.App.—Tyler 1972, no writ).

■ The term "slander", as it relates to modern usage, is applied to oral defamations only, both in its technical use and in its common acceptation. "Defamatory language may be actionable *per se*, that is, in itself, or may be actionable per quod, that is, only on allegation and proof of special damages. The distinction is based on a rule of evidence, the difference between them lying in the proof of the resulting injury." 36 Tex.Jur.2d *Libel and Slander* § 2, pp. 280–281.

■ In general, oral words, however opprobrious, are not actionable without proof of special damages unless they impute to another the commission of a crime or affect a person injuriously in his office, profession or occupation. 36 Tex.Jur.2d § 3, pp. 282–283; cited with approval in *Butler v. Central Bank & Trust Company*, 458 S.W.2d 510 (Tex.Civ.App.—Dallas 1970, writ dism'd).

Appellee relied upon the defense of qualified or conditional privilege, which has been defined as encompassing all communications made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty. *Ryder Truck Rentals v. Latham*, 593 S.W.2d 334 (Tex. Civ.App.—El Paso 1979, writ ref'd n. r. e.); *Zarate v. Cortinas*, 553 S.W.2d 652 (Tex.Civ. App.—Corpus Christi 1977, no writ).

■ Where an action is based on a conditionally or qualifiedly privileged communication or statement, the plaintiff must show, to be entitled to recovery, that it was actuated, inspired or colored by actual or express malice, existing as a fact at the

---

**2.** While the issue of conditional privilege was not submitted to the jury, we note that the language of Special Issue No. 2 as submitted assumes the existence of a privileged occasion, and the affirmative answer of the jury reinforces our belief that the question of privilege was never really disputed.

time of the publication, or by some evil motive or bad faith. *Cranfill v. Hayden,* 97 Tex. 544, 80 S.W. 609 (1904); *Nickson v. Avalanche Journal Publishing Co.,* 344 S.W.2d 749 (Tex.Civ.App.—Amarillo 1961, no writ).

Additionally, where an utterance is qualifiedly privileged the law presumes good faith and want of malice. *Jackson v. Cheatwood,* 445 S.W.2d 513 (Tex.1969). But unless a question of privilege is involved, malice is presumed or implied and need not be proved in actions where the words used are slanderous *per se. Houston Belt & Terminal Railway Co. v. Wherry,* 548 S.W.2d 743 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n. r. e.), *cert. denied* 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977).

And in determining whether the charge was justified the words used should be weighed and considered in the light of the circumstances, and they should be given the effect that they probably produced on the minds of the persons to whom they were addressed. *Burkhiser v. Lyons,* 167 S.W. 244 (Tex.Civ.App.—San Antonio 1914, no writ).

While we recognize that the privilege may be abused, in the absence of such abuse and of malice the defense of conditional or qualified privilege may extend even to a communication that is false. *Snider v. Leatherwood, supra; Nunn v. Webster,* 260 S.W. 157 (Texas Com.App.1924, judgment adopted).

Appellant relies entirely upon libel cases in which newspaper publishers claimed a statutory privilege[3], which under the circumstances we deem not controlling.

In *Davila v. Caller Times Publishing Co.,* 311 S.W.2d 945 (Tex.Civ.App.—San Antonio 1958, no writ), the Court stated:

An untrue statement *published in a newspaper* charging plaintiff with the commission of an offense cannot be defended on the ground that it was privileged matter. Defendant, however innocent may have been the mistake, is liable for actual damages. (Emphasis supplied). Citing *Wortham-Carter Pub. Co. v. Littlepage,* 223 S.W. 1043 (Tex.Civ.App.—Fort Worth 1920, no writ).

311 S.W.2d 945 at 947.

In *Denton Publishing Co. v. Boyd,* 460 S.W.2d 881 (Tex.1970), the Court, speaking through Justice Greenhill, correctly noted that there were issues of fact surrounding the existence or nonexistence of a statutory privilege relied upon by the defendant, and under the circumstances a failure to request a jury issue upon the matter constituted a waiver of the defense. By way of explanation, the Court pointed out that portions of the statement complained of were not within the requirements of the statute conferring the privilege:

The publication would be within the privilege provided by statute as long as it purported to be and was, only a fair, true and impartial report of what was stated at the meeting regardless of whether the facts under discussion at such meeting were in fact true, unless the report was made with malice. (Citations omitted).

460 S.W.2d 881 at 883.

The requirement of Article 5432 that the publication must be a 'fair, true and impartial account of the proceedings' makes this a qualified privilege, and not an absolute privilege. A report which is not fair, true and impartial or which is actuated by malice does not enjoy this privilege. (Citations omitted).

460 S.W.2d 881 at 884.

The opinion in *Denton* likewise recognizes that in situations where the plaintiff's own pleadings discloses on its face the existence of a privilege, no duty devolves upon the defendant to obtain a jury finding, but the burden is rather upon the plaintiff to show that the privilege is lost.

Our Supreme Court, in adopting the opinion of the Commission of Appeals in *Bell Pub. Co. v. Garrett Engineering Co.,* 141 Tex. 51, 170 S.W.2d 197 (Texas Com.App. 1943, opinion adopted), recognized the difference between a statutory privilege and

---

**3.** Article 5432, Vernon's Annotated Civil Statutes.

"ordinary conditional privilege." The court had occasion to distinguish the former as applicable to otherwise libelous statements printed by newspaper publications and the latter as applicable to otherwise slanderous remarks made to those interested in receiving such communications. In doing so the court stated:

> In the present case the statements were published in a newspaper of general circulation in approximately a hundred counties, including the county of plaintiff's domicile. Under such circumstances defamatory statements are far more destructive of a person's reputation than the same statements made to a few persons directly interested. In line with this view, the weight of authority is that defamatory misstatements concerning public officers or candidates for office, published in newspapers or periodicals of general circulation, are not protected by the ordinary conditional privilege, and whether made maliciously or not, are actionable unless they come within the bounds of fair comment.

170 S.W.2d 197 at 205.

 As we believe the instant case to fall within the rule announced in *Christy v. Stauffer Publications, Inc.*, 437 S.W.2d 814 (Tex.1969), and *Fitzjarrald v. Panhandle Pub. Co.*, 149 Tex. 87, 228 S.W.2d 499 (1950), that where the facts and circumstances surrounding the publication are undisputed it is for the court to decide, we think that the trial court was authorized to conclude that the communication was privileged as a matter of law.

A contention similar to appellant's was recently before our Supreme Court in *Dixon v. Southwestern Bell Telephone Company*, 607 S.W.2d 240 (Tex.1980), and there the court once again distinguished those cases wherein the very existence of the privilege is in issue from those in which the evidence so conclusively proves a fact issue that the matter becomes a question of law. See also *Great American Mortgage Investors v. Louisville Title Insurance Company*, 597 S.W.2d 425 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n. r. e.).

The jury found as a fact, and appellant conceded, that the only statement in question was that made by appellee as a director of the bank at the meeting of the loan review committee on October 13, 1977.

 We think that under all of the evidence adduced and the jury findings obtained, the trial court was not only authorized but obligated to conclude as a matter of law that appellee uttered the remarks in question, duty bound and in good faith, on a subject of interest to him as a bank director and to the other directors and officers of the bank. Having concluded that the trial court correctly found the existence of conditional privilege, the jury finding of no malice permitted the trial court to bring into play the provisions of Rule 301, Tex.R. Civ.P., to disregard jury findings which were immaterial. *Frost National Bank v. Nicholas and Barrera*, 534 S.W.2d 927 (Tex. Civ.App.—Tyler 1976, writ ref'd n. r. e.).

Accordingly, appellant's points of error are overruled and the judgment of the trial court is affirmed.