**W.R. TATUM, Appellant,**

v.

**Carolyn LINER, Appellee.**

**No. 04–86–00575–CV.**

Court of Appeals of Texas, San Antonio.

April 13, 1988.

Viviana S. Cavada, Corpus Christi, for appellant.

James A. Kosub, Kosub & Gaul, San Antonio, for appellee.

Before BUTTS, CANTU and CHAPA, JJ.

## OPINION

CANTU, Justice.

Carolyn Liner, appellee, brought suit against appellant, W.R. Tatum, for defamation. Appellee had been employed as personnel manager for the City of Seguin and had resigned to become director of personnel for the City of San Marcos. Specifically, appellee alleged that appellant made statements about appellee misrepresenting her Seguin salary in order to obtain a salary in San Marcos exceeding her Seguin salary by $9,000, and that appellee had experienced some trouble with Seguin's City Council due to excessive absences and to a possible conflict of interest with her work for the Seguin Chamber of Commerce. The evidence showed that appellant, who was Treasurer for the City of

Seguin, repeated such statements on several occasions to a San Marcos City Councilman, appellant was present at a San Marcos City Council meeting to speak about appellee, and he gave press releases about appellee to the San Marcos newspaper and radio.

A jury found that the alleged statements by appellant were defamatory, false, and made without privilege, but made without malice. The jury assessed appellee's damages at $10,000, with an additional award of $65,000 for punitive damages. The trial judge, however, entered judgment deleting punitive damages because the jury found no malice. Judgment was entered for appellee in the sum of $10,000 plus prejudgment interest.

Appellant brings seventeen points of error. Appellant complains of the trial court's refusal to grant a judgment n.o.v. on grounds of the defenses of privilege, truth, and no injury. Furthermore, appellant contends there was no evidence and insufficient evidence to support several of the jury's findings. Finally, appellant complains of the rendering of prejudgment interest.

Appellee in one cross-point of error alleges that the trial court erred in excluding the jury award of $65,000 as punitive damages.

We affirm the trial court's judgment.

## I. REFUSAL TO GRANT JUDGMENT N.O.V.

### A. Privilege

In his first point of error, appellant multifariously states that "[t]he trial court erred in overruling his motion for judgment n.o.v. and his motion for [instructed] verdict because the evidence establishes as a matter of law that the statements made by [appellant] were privileged, and [appellee] failed to prove that [appellant] made the statements with malice." Appellant's point is not properly briefed because it groups together at least two independent complaints, without reference to the record, and the argument confuses four distinct privileges. Nevertheless, this Court will consider each contention as we glean it from the body of appellant's brief. TEX.R. APP.P. 74(d).

Appellant affirmatively raised privilege in his answer, alleging that appellee is a public official which gives the public an independent interest in her job performance and qualifications. Appellant's answer further raised privilege under the first and fourteenth amendments of the United States Constitution because the statements allegedly constituted "fair comment and criticism" of appellee made without actual malice.

■ Defendant's Motion for Instructed Verdict, which was denied, made reference only to damages and made no reference to any privilege. Thus, no error can be assigned to the trial judge's overruling of the motion for instructed verdict on the basis of privilege since it was not raised in the motion. The portion of appellant's first point of error which complains of the trial court's failure to grant an instructed verdict is overruled.

Appellant made a motion for summary judgment, claiming privilege, which was denied. However, appellant does not complain on appeal of the trial court's failure to grant summary judgment. The record does not reflect that appellant requested the trial judge to find privilege as a matter of law at any time prior to the submission of issues.

Appellant's requested Special Issue No. 8 and accompanying instruction are as follows:

SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that the statements made by defendant were privileged?

YES ___    NO ___

The defendant has plead [sic] that the statements made to the City Councilman in San Marcos were privileged because it involved matters of substantial public interest. *The Court has decided as a matter of law that the matter involved was such as to entitle defendant to assert this defense.* A privileged communi-

cation that may be defamatory in character is a communication by a person in the discharge of some private or public duty, legal or moral, or in the conduct of his own affairs in matters where his interest is concerned. However, the law is that the defense is destroyed of [sic] the privilege is abused by the one claiming it. The burden is on the plaintiff to show such abuse in order to overcome the privilege. Such a showing may be made by evidence that the defendant acted maliciously or in bad faith, with intent to injure the reputation of the plaintiff, and with actual malice. (emphasis added).

The trial court, instead, submitted to the jury the following instruction and Special Issue No. 5:

A privileged communication that may be defamatory in character is a communication by a person in the discharge of some private or public duty, legal or moral, or in the conduct of his own affairs in matters where his interest is concerned. However, the law is that the defense is destroyed if the privilege is abused by the one claiming it. The burden is on the plaintiff to show such abuse in order to overcome the privilege. Such a showing may be made by evidence that the defendant acted maliciously or in bad faith, with intent to injure the reputation of the plaitiff [sic], and with actual malice.

### SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that the statements made by defendant were privileged?

Answer "Yes" or "No."

Answer __NO__

Appellant's motion for judgment n.o.v., which was filed September 2, 1986, includes the following argument:

There is no evidence to support the jury's answer of "No" to Special Issue No. 5, which reads as follows:

'Do you find from a preponderance of the evidence that the statements made by defendant were privileged?'

The evidence was overwhelmingly to the contrary. Moreover, plaintiff was a public official. As Personnel Director, she was required, from time to time, to appear at City Council meetings and report to the council. In addition, she made public appearances at Chamber of Commerce ceremonies, participating in such ceremonies, and posing for newspaper photos. Plaintiff, in addition, held one of the highest paid positions with the City. Defendant further showed the Court that the nature of his communication with the City councilman was qualifiedly privileged in that the communication was made in good faith, and was a subject matter of common interest to the two, such subject matter being the expenditure of public funds in their respective cities. The Supreme Court of the United States has held that a qualified or conditional privilege may attach to communications made in good faith regarding some common or mutual interest of the speaker or writer and the person or persons to whom the communication is directed. *McDowell v. State*, 465 F.2d 1342, 1344–1345 (5th Cir.Tex.1971), *cert. denied*, 410 U.S. 943 [93 S.Ct. 1371], 93 [35] L.Ed.2d 610 (1973). The jury has found there was no malice by defendant.

The record does not affirmatively show that the motion for judgment n.o.v. was denied, but we presume the motion was denied because judgment was rendered on the verdict.

The matter of whether a communication is privileged is a question of law for the trial judge to decide. *See Rosenblatt v. Baer*, 383 U.S. 75, 88, 86 S.Ct. 669, 677, 15 L.Ed.2d 597, 606 (1966); RESTATEMENT (SECOND) OF TORTS § 619 (1977). Pursuant to Texas Rules of Civil Procedure Rule 248: "When a jury has been demanded, questions of law ... shall, as far as practicable, be heard and determined by the court before the day designated for the trial...." TEX.R.CIV.P. 248. In the instant case, there is no record that appellant ever requested the trial judge to make a specific conclusion of law as to privilege, prior to requesting his Special Issue No. 8.

■ Although the judge did not mark or sign requested Special Issue No. 8, Special

Issue No. 8 was presumptively modified when the judge submitted Special Issue No. 5 to the jury and omitted the portion of appellant's requested instruction which stated "The Court has decided as a matter of law that the matter involved was such as to entitle defendant to assert this [privilege] defense." Although the instruction was modified, the issue of whether the statements were privileged was submitted to the jury exactly as appellant requested it. The trial judge, therefore, erroneously gave the entire issue of privilege, a question of law, to the jury to decide. The jury may decide whether the privilege was abused, but it is not for the jury to decide whether the privilege exists. *See* RESTATEMENT (SECOND) OF TORTS § 619 (1977). The jury's answer to Special Issue No. 5 is, therefore, immaterial because as a matter of law the jury could not answer Special Issue No. 5.

█ At no time did appellant ask the trial judge to find privilege as a matter of law, nor does appellant's motion for judgment n.o.v. complain of the failure of the trial judge to decide whether there was privilege. Appellant's motion for judgment n.o.v. objects to the jury's answer of "no" to Special Issue No. 5. No complaint is made that the issue was not one for the jury to decide. We cannot find error when none is complained of in a proper point of error and especially when appellant invited the error. Appellant never objected to the submission of Special Issue No. 5 to the jury; indeed appellant, himself, requested that the issue of privilege be given to the jury. Appellant's motion for judgment n.o. v. does not preserve error because it objects only to the jury's finding, not to the submission of the issue to the jury. As before stated, we hold that the jury's answer to Special Issue No. 5 is immaterial because it was not a question within the province of the jury to decide. Because the jury's answer is immaterial, we cannot find it to be error. Appellant's first point of error is overruled.

### B. Truth

Appellant's second point of error complains of the trial judge's refusal to grant judgment n.o.v. "because the evidence establishes as a matter of law that the alleged defamatory statement that plaintiff had trouble with some councilmen because of her activities with the Chamber of Commerce and not being at City Hall during working hours were true." This point of error addresses a "legal insufficiency of evidence" complaint. *See Williford v. Masten,* 521 S.W.2d 878, 882–83 (Tex.Civ. App.—Amarillo 1975, writ ref'd n.r.e.); *see also* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 4 TEXAS L.REV. 361, 362–64 (1960).

The motion for judgment n.o.v. is the proper procedural basis for a legal insufficiency point of error. *See* Calvert, *supra,* at 362. Had appellant's point of error sounded in "factual insufficiency of the evidence," a motion for new trial would have been required to preserve error, and this was not done. *See id.* at 365; TEX.R. CIV.P. 324(b).

The jury was instructed on the defense of truth and found the appellant's statements to be false in their answers to Special Issues No. 3 and 4:

The defendant has plead [sic] the defense of truth, and the Court instructs you that, if this defense has been established, it is a complete bar to the plaintiff's action, even if the defendant made the statements with a malicious motive. The defendant has the burden of proving truth by a reasonable preponderance of the evidence as defined by the Court. To establish this defense, defendant must prove the truth of all important statements made in the alleged defamatory statements of which plaintiff complains; however, defendant is not required to prove the truth of trivial or insignificant statements. If the defendant failed to prove truth of the alleged defamatory statements, then this defense falls and you will proceed to determine the other issues in the case. On the other hand, if you find that the testimony established the truth of the alleged statements, such defense is an absolute defense.

## SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that the statements in Special Issue No. 1 were substantially true?

Answer "Yes" or "No."

Answer: _No_

If you have answered Special Issue No. 3 "Yes," do not answer any more Special Issues. If you have answered Special Issue No. 3 "No," then continue to answer the following Special Issues as instructed.

## SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the statements in Special Issue No. 1 were false?

Answer "Yes" or "No."

Answer: _Yes_

\* \* \* \* \* \*

▮ The burden of proof was on the appellant to show that the alleged defamatory statements were true. *See Frank B. Hall & Co., Inc. v. Buck,* 678 S.W.2d 612, 623–25 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied,* 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985). The jury failed to find affirmatively on the issue of truth in Special Issue No. 3, and no evidence is required to support the jury's negative finding. *See Williford, supra,* at 883. Appellant's point of error will be sustained if the converse of the jury's negative finding in Special Issue No. 3 is conclusively established. If the evidence does not conclusively establish the truth of appellant's statements, but instead the evidence at least gives rise to a fact issue, the "matter of law" point of error will be overruled. *See Bobbitt v. Electronic Data Systems Corp.,* 652 S.W.2d 620, 622 (Tex.App.—Dallas 1983, no writ); *Williford, supra,* at 889.

We hold that the evidence merely raises a fact issue, and does not conclusively establish, that appellant's statements regarding Seguin City Councilmen having problems with Ms. Liner's absences were true. In support of his point of error, appellant points to the testimony of city councilman Larry Moltz:

"Some of the members of the Council would have reason or at least they felt they had reason to be in contact with key staff people, and upon calling the City Hall, would not be able to locate the people that they needed to contact."

Another councilman, Ruben Contreras, testified:

Q: Were there times when you called and [Ms. Liner] was not there?

A: Yes, ma'am; but, her other was there, assistant.

Q: Her other assistant was there?

A: Sometimes neither one was there; but, that is expected when they go to lunch or whatever.

\* \* \* \* \* \*

A: Well, it was not only Ms. Liner, it was others, you know, that wasn't there when we asked for them. We thought we would get better communication from City Hall with the sign in and sign out so we would know where they were and contact them.

\* \* \* \* \* \*

Q: Mr. Contreras, did you ever talk to anybody about not being able to get hold of Ms. Liner; did you talk to the Mayor?

A: I don't remember saying anybody in particular.

Q: And, do you know—can you give me a guess as to how many times you tried to get hold of Ms. Liner and couldn't find her?

A: I don't remember, sir. It was several times.

Q: You are not telling this jury today that just because she was not at City Hall, she was not doing her job; are you telling us that?

A: I didn't say that, no, sir.

Q: You just are saying that when you called, she might have been some place else working, but she was not in her office?

A: I don't know where she was.

Q: Would you consider that as having problems with her?

A: Do you mean me having problems with her?

Q: Yes?

A: Well, I would have to say yes and no, I guess, because if you need information and you can't get hold of her or whoever else you are looking for, it is a problem.

This portion of the record is sufficient to show that a question of fact was raised as to whether the city councilmen were having a problem with Ms. Liner's absences. The testimony mainly refers to the absences of staff people in general and not to any problem with Ms. Liner individually. There is no evidence to suggest that she was not doing her job satisfactorily. The credibility of the witnesses was for the jury to ascertain. We are prohibited from invading the province of the jury in weighing the truthfulness of appellant's statements.

As to whether there was a conflict of interest in Ms. Liner's working for the city and being associated with the Chamber of Commerce, appellant offered the testimony of several witnesses to testify that Ms. Liner attended ribbon cutting ceremonies. None, however, testified positively that this caused a problem with her job as personnel manager. Seguin city councilman Roger Weyel testified:

You Know, I did hear a lot of times, you know, that she was at a lot of ribbon cuttings. You saw her picture in the paper at ribbon cuttings, and really, she was working for the City. Now, whether her duties was to work for the City and the City gave her permission to do that, I don't know what her job description was, and I can't remember. I never looked it up. But, I did hear that comment a lot of times, that people had called and she would be gone, and I don't know whether that was—She may have had permission from the Mayor to do that. I don't know. It may have been okay. I don't know.

Again it was for the jury to determine the truth or falsity of appellant's statements that Ms. Liner had problems with some city councilmen because of her activities with the Chamber of Commerce. We

cannot hold as a matter of law that the statements were true based on this testimony.

Moreover, we note that the matters alleged to be true in appellant's second point of error are but a part of appellee's defamation action. The jury additionally found defamatory the statement that appellee had misrepresented her Seguin salary. Even if the matters alleged in point of error two were true as a matter of law, we find that that alone would not justify granting the judgment n.o.v. because the jury found appellant's statement that appellee had misrepresented her Seguin salary to be defamatory. Appellant's second point of error is overruled.

### C. No Injury

Appellant's third point of error alleges error in the trial court's overruling of appellant's motion for judgment n.o.v. and his motion for directed verdict because the evidence allegedly establishes as a matter of law that appellee sustained no injury as a result of the alleged defamatory statements. Appellant's point of error sounds in legal insufficiency, and because appellant expressed it in terms of "matter of law," the point is to be treated as one of "no evidence." Thus, we may sustain point of error three only if there is no evidence, or no more than a scintilla of evidence, to support the jury's finding of injury in Special Issue No. 7. *See* Calvert, *supra*, at 362–63.

The jury found injury to appellee in Special Issue No. 7:

Do you find from a preponderance of the evidence that plaintiff, Carolyn Liner, suffered damage of loss of reputation and esteem in the community, as well as credibility as to her truth and veracity?

Answer: Yes

Appellant argues that the statements were not slanderous per se because they did not tend to injure Ms. Liner in her profession, and, therefore, the words were not actionable without proof of special damages. We find that the statements did tend to injure appellee in her profession.

As a general rule, slander is actionable per se (without proof of special damages) if it injures a person in his office, business, profession or occupation. *See Buck v. Savage*, 323 S.W.2d 363, 368 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.; RESTATEMENT (SECOND) OF TORTS § 573 (1977). There have been cases in which an issue arose as to whether a statement about a person's general character would affect that person's business. *See* Comment C, RESTATEMENT (SECOND) OF TORTS § 573 (1977). Appellant's statements which the jury found defamatory were not statements about appellee's general character, but related directly to her job performance. Words which charge an employee with dishonesty in dealing with his employer have been held slanderous per se, and injury to reputation is presumed. *West Texas Utilities Co. v. Wills*, 164 S.W.2d 405, 408 (Tex.Civ.App.—Austin 1942, no writ). Statements that appellee had trouble on the job because of her absences and that appellee made misrepresentations in order to get a higher salary clearly, on their face, relate to appellee's profession. Therefore, we hold that appellant's statements were slanderous per se, and appellant was required to prove lack of injury to appellee.

In deciding whether there is any evidence of probative force to support the jury finding, this court may consider only evidence and inferences tending to support the finding and must disregard all evidence and inferences contrary to the jury finding. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965) Ms. Liner testified that the city council of San Marcos was "really questioning my employment," and that the "seeds of doubt" had been planted. She further testified that these false statements affected her ability to do her job, would cause irreparable damage to her credibility, and that her supervisors would not be likely to take her advice or follow her recommendations if they did not trust her. Mr. A.C. Gonzalez, City Manager of San Marcos, testified that these interruptions of Ms. Liner's duties were making it difficult to keep up with the work load and were not conducive to a good relationship with the staff. Appellee presented an expert witness, Mr. Chiabotta, who testified that a person's business reputation is critical to promotion in the business of city personnel directors. The expert further testified in response to a hypothetical situation:

Q: Let's assume that we have an individual working at the city the size of San Marcos, which is about 35,000 people, I understand; and rumors were spread that that individual had possibly lied about salaries in order to get an increase in salary when they moved to that city, that there had been conflicts of interest at the prior employer, and that that person had had difficulty with dealing with the City Council. Would that have an adverse effect, in your opinion, on the individual moving up to a city the size of Irving?

A: It would have an effect on moving from any city to another because the City Managers have a very close network in Texas.

We are not prepared to say that this is only a mere scintilla of evidence of injury to appellee's business reputation. We hold that there was some evidence to support the jury's finding of injury, and that appellant failed to overcome the presumption of injury.

Appellant's third point of error is overruled.

## II. NO EVIDENCE AND INSUFFICIENT EVIDENCE TO SUPPORT JURY FINDINGS

### A. Factually Insufficient Evidence

■ Appellant next brings several points of error complaining of a lack of factually sufficient evidence to support the jury's findings. Point of error four complains of insufficient evidence to support the jury's answer to Special Issue No. 1. Point of error nine complains of insufficient evidence to support the jury's answer to Special Issue No. 4. Point of error ten alleges error because of insufficient evidence to support the jury's answer to Special Issue No. 7. Point of error thirteen complains of

a lack of sufficient evidence to support the jury's finding to Special Issue No. 8. Appellant's point of error fifteen complains of insufficient evidence to support the jury's answer to Special Issue No. 9. We hold that appellant has waived all points of error related to factual sufficiency of the evidence because appellant did not file a motion for new trial.

TEX.R.CIV.P. 324(b) clearly states:

A point in a motion for new trial is a prerequisite to the following complaints on appeal:

\* \* \* \* \* \*

(2) A complaint of factual insufficiency of the evidence to support a jury finding.

(3) A complaint that a jury finding is against the overwhelming weight of the evidence.

There is nothing in the record to show the filing of a motion for new trial in this case. We, accordingly, overrule points of error four, nine, ten, thirteen, and fifteen.

■ Additionally, appellant has further waived his points of error numbers four and nine by completely failing to brief these points. TEX.R.APP.P. 74(d), (f), and (p). The rule provides:

## B. BRIEFS AND ARGUMENT IN THE COURTS OF APPEAL

Rule 74. Requisites of Briefs

\* \* \* \* \* \*

(d) Points of Error. A statement of the points upon which an appeal is predicated shall be stated in short form without argument and be separately numbered. *In parentheses after each point, reference shall be made to the page of the record where the matter complained of is to be found.* A point is sufficient if it directs the attention of the appellate court to the error about which complaint is made. In civil cases, complaints that the evidence is legally or factually insufficient to support a particular issue or finding, and challenges directed against any conclusions of law of the trial court based upon such issues or findings, may be combined under a single point of error raising both contentions if the record references and the argument under the point sufficiently direct the court's attention to the nature of the complaint made regarding each such issue or finding or legal conclusion based thereon. *Complaints made as to several issues or findings relating to one ground of recovery or defense may be combined in one point, if separate record references are made.*

\* \* \* \* \* \*

(f) Argument. A brief of the argument may present separately or grouped the points relied upon for reversal. *The argument shall include: (1) a fair, condensed statement of the facts pertinent to such points, with reference to the pages in the record where the same may be found; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue.* If complaint is made of any part of the charge given or refused, such part of the charge shall be set out in full. If complaint is made of the improper admission or rejection of evidence, the substance of such evidence so admitted or rejected shall be set out with references to the pages of the record where the same may be found. Repetition or prolixity of statement or argument must be avoided. Any statement made by appellant in his original brief as to the facts or the record may be accepted by the court as correct unless challenged by the opposing party.

\* \* \* \* \* \*

(p) Briefing Rules to be Construed Liberally. The purpose of briefs being to acquaint the court with the points relied upon, the manner in which they arose, together with such argument of facts and laws as will enable the court to decide the same, a substantial compliance with these rules will suffice in the interest of justice; *but for a flagrant violation of this rule* the court may require the case to be rebriefed.

TEX.R.APP.P. 74(d), (f), and (p) (emphasis added). Appellant merely listed points of error four and nine, without any reference

to the record, in short form without argument. There was not any argument on these points anywhere in appellant's brief, nor in his response brief. In fact, points of error four and nine are never mentioned at all in appellant's "Brief of the Argument." We believe this to be a "flagrant" violation of Rule 74, and we are not bound to consider points which are not briefed at all. Points of error four and nine are completely unbriefed, point to no alleged error in the record, and, thus, are not actual points of error. Therefore, no useful purpose would be served by requiring a rebriefing of points never once briefed. Moreover, both of these points refer to the Court's overruling of appellant's motion for judgment n.o.v., which alleged error was adequately covered by appellant's points 1, 2, 3, 7, 10, 13, 15 and 16.

### B. Miscellaneous

Appellant's fifth point of error complains that there was no pleading or proof of special damages and, therefore, the court erred in submitting special issues on defamation. We have already found that the alleged statements constituted slander per se and require no pleading or proof of special damages. Furthermore, plaintiff's original petition, filed May 15, 1985, pled special damages:

### IX.

As a further and direct and proximate result of the above described words, Plaintiff has suffered the following special damages:

a. A loss of professional opportunity in that her reputation of truth and veracity has been attacked;

b. A loss of trust and esteem between herself and her employer, City Council of San Marcos, Texas;

c. Loss of potential raises and bonuses.

\* \* \* \* \* \*

### XI.

As a direct and proximate result of Defendant's conduct as above described, Plaintiff has suffered loss of reputation and esteem in the community as well as credibility as to truth and veracity. Plaintiff is further suffering damage to her career and the relationship that is formulated in the first few weeks of employment with a new employer. The total lost [sic] of Plaintiff cannot be adequately measured although her reputation will be irreparably harmed if Defendant is allowed to continue making statements about her.

We have previously discussed, under appellant's third point of error, that evidence was presented at trial in support of these pleadings.

Appellant's fifth point of error is without merit and is overruled.[1]

Appellant's sixth and seventh points of error complain of the broad form of issue submission in Special Issue No. 1. Point of error five alleges error because Special Issue No. 1 does not specifically identify the statements to which it refers and does not conform to the pleadings. Point of error seven assigns error to Special Issues No. 2 and 4 because they are based on the alleged statement in Special Issue No. 1.

Special Issues No. 1, 2 and 4 stated:

### SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Defendant, W.R. Tatum, made statements about the Plaintiff, Carolyn Liner, to individuals of the City of San Marcos' staff and/or elected City Council?

Answer "Yes" or "No."

Answer: <u>Yes</u>

---

1. The dissenting judge would reverse on a complaint not raised on appeal, that is, that there is not a jury finding that the slanderous statements were such as meet the definition of slander per se in § 573 of RESTATEMENT OF TORTS (SECOND). We have searched the appellant's brief in vain for such a contention and are satisfied that the only arguments advanced are (1) that the statements are not actionable per se, and (2) that there is no proof of harm resulting from the statements.

The Court instructs you that the statements sued on are reasonably capable of two meanings, one nondefamatory or innocent, and the other defamatory; it is for you to determine, in the light of the circumstances of the statements as disclosed by the evidence and the entire context of the statements, which of these two meanings was understood by the individual hearing the statements.

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that the statements in Special Issue No. 1 were defamatory to the plaintiff?

Answer "Yes" or "No."

Answer: Yes

You are instructed that a defamatory statement is a statement tending to injure the reputation of a person, and expose her to public hatred, contempt or ridicule, or financial injury, or to impeach her honesty, integrity or virtue.

\*    \*    \*    \*    \*    \*

### SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the statements in Special Issue No. 1 were false?

Answer "Yes" or "No."

Answer: Yes

Appellant never objected to the submission of any special issue before the charge was given to the jury. Rule 274 provides that any complaint to the charge is waived unless specifically objected to with an objection that distinctly points out the objectionable matter and the grounds for objections. TEX.R.CIV.P. 274. Because no objection was lodged, appellant waived the error, if any.

Points of error six and seven are overruled.

### C.  No Evidence Points

Appellant's points of error numbers eight, eleven, twelve, fourteen, and sixteen are "no evidence" points. We review these points according to the standard set forth in *Freeman v. Texas Comp. Ins. Co.*, 603 S.W.2d 186, 191 (Tex.1980). We must consider only the evidence and inferences that support the verdict and view the evidence in the light most favorable to the verdict. A "no evidence" point of error will be sustained only if there is a complete absence of evidence or no more than a scintilla of evidence to support the jury's finding. *See id.*

■■ Appellant's point of error number eight complains that the trial court erred in submitting Special Issue No. 4 to the jury because there was no evidence to support or raise the issue. The issue in Special Issue No. 4 was whether the statements made by appellant were false.

We hold that there was some evidence to raise and support this issue. The mayor of Seguin, Betty Jean Jones, testified at length that Ms. Liner had no problems with the City Council of Seguin. This was sufficient evidence to support the jury's finding that the statement that Ms. Liner had problems with Seguin's city council was false. Robert Herrera, Assistant City Manager for the City of San Marcos, testified that he had contacted the Mayor of Seguin to confirm Ms. Liner's salary and that it was "not correct" that she had gone to work for San Marcos at a $9,000 to $10,000 raise. Mr. Herrera further testified that Ms. Liner's salary in Seguin had been in line with what she had told him at her interview, and that her salary in San Marcos was "a little over $5,000.00" more than what she earned in Seguin. Plaintiff's exhibit four, admitted at trial, shows the salary for personnel director in San Marcos in 1985 at $29,244. Plaintiff's exhibit two, admitted at trial, shows the salary for Seguin's personnel director in 1985 at $23,691.20, which is $5,552.80 less than the salary paid by San Marcos. Ms. Liner testified that she was hired by San Marcos at an increase in salary of approximately $5,500. Mr. A.C. Gonzalez, San Marcos' City Manager, testified that appellee did not misrepresent her salary. The evidence clearly supports the jury's finding that statements were false which stated that Ms. Liner misrepresented her Seguin salary in order to get a $9,000 raise when hired by San Marcos.

Appellant's eighth point of error is without merit and is overruled.

Appellant's eleventh point of error alleges error in the court's submission of Special Issue No. 7 to the jury because there was no evidence to raise or support the issue. Special Issue No. 7 questioned the jury on damages in the form of loss of reputation and credibility. As we have already held that the defamation alleged in this case constituted slander per se and that damages are presumed, no evidence is required to raise or support this issue. Furthermore, we have already discussed under point of error number three that there was evidence presented at trial to support this issue.

Appellant's eleventh point of error is without merit and is overruled.

Appellant's twelfth point of error argues that there was no evidence to support or raise the issue in Special Issue No. 8. Special Issue No. 8 questioned the jury whether appellant's statements were the producing cause of appellee's damages. Appellant's point of error fourteen complained of no evidence to raise or support Special Issue No. 9 which asked the jury to find what dollar amount would compensate appellee for her damages. Appellant's sixteenth point of error complained of no evidence to support the jury's findings of damages.

We find that there was evidence to raise and support the damages special issues and that the evidence supported the jury's findings. As previously discussed under point of error three, appellee presented ample evidence of injury to her credibility and that the statements, even though proven false, had already caused San Marcos' City Council to question her and would likely reduce her effectiveness and her chances of promotion. Points of error twelve, fourteen and sixteen are overruled.

## III. PREJUDGMENT INTEREST

■ Appellant's final point of error complains of the trial court's action in awarding plaintiff prejudgment interest. As in points of error four, eight, and nine; appellant has completely failed to brief this point. Nevertheless, it is clear that pre-judgment interest is recoverable in tort cases. *See Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 553 (Tex. 1985); *City of Houston v. Wolfe*, 712 S.W.2d 228, 229–30 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd). Point of error seventeen is overruled.

## IV. APPELLEE'S CROSS–POINT

■ Appellee's cross-point claims the trial court erred in excluding the jury's award of $65,000 exemplary damages from the final judgment.

The jury found $65,000 in exemplary damages in response to Special Issue No. 10, but found no malice in response to Special Issue No. 6. Appellee argues that the issue of malice is not required when there is a showing of slander per se damaging a person's business reputation, and appellee relies on the jury finding in Special Issue No. 7 that appellee did suffer a loss of reputation. Appellee contends that malice is conclusively presumed, therefore, she is entitled to exemplary damages.

Proof of malice is not required to entitle a plaintiff to *actual* damages in a case of slander per se. However, the presumption of malice may be rebutted. *See* 50 Am.Jur. 2d *Libel and Slander* § 456 (1970).

We find no support in the law for appellee's position that she is entitled to *exemplary* damages despite the jury's finding of "no malice."

Appellee does not and cannot complain of the submission of Special Issue No. 6 (inquiring as to malice) to the jury because appellee never objected to this issue nor preserved any error regarding its submission. Moreover, appellee does not contend that the jury's finding of no malice in Special Issue No. 6 was erroneous due to no evidence or insufficient evidence to support the finding. Appellee's sole contention is that malice should be conclusively presumed so that the jury's finding is immaterial.

Mandatory conclusive presumptions are not permissible in Texas. For every presumption under Texas law, there is the right of rebuttal; and if the party opposing the presumption is able to disprove what

was presumed, the jury is entitled to discard the presumption.

We recognize that in cases of slander per se, if there is no privilege involved, malice is presumed and need not be proved. *See Goree v. Carnes*, 625 S.W.2d 380, 385 (Tex. App.—San Antonio 1981, no writ). However, it is also true that the presumption of malice can be rebutted. Where the jury has found no malice, the presumption has been rebutted, and the trial court is obligated to disregard subsequent findings of damages. *See id.* at 386.

Exemplary damages, by definition, are a form of punishment, and are not to be awarded unless it has been shown that there was malice. Appellant cannot be held "strictly liable" for exemplary damages where the jury has found that appellant did not minimally possess a reckless disregard for the truth.

Appellee's cross-point is overruled.

The judgment of the trial court is in all things affirmed.

CHAPA, Justice, concurring.

I concur.

The dissent is based on the contention that the court's definition of "defamatory statement" in Issue No. 2 was erroneous because it was "not the required definition of slander per se under § 573 of [RESTATEMENT OF TORTS (SECOND)]."

However, this contention is not properly raised before this Court. We initially note that in addition to violating TEX.R.APP.P. 74(d) by multifariously co-mingling several points of error, appellant's brief does not complain that an instruction in the charge was improper. Rather, appellant's argument on appeal is sounded on a "no evidence" complaint. Ironically, we note in the record that at the trial, appellant's objection to the charge was also sounded on a "no evidence" complaint as to this and most other issues. Appellant cannot assert error for the first time on appeal as to an alleged improper instruction and expect this Court to grant relief. *State v. Lackey*, 576 S.W.2d 685, 688–89 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *Southwestern Bell Telephone Co. v. Ramsey*, 542 S.W.2d 466, 476 (Tex.Civ.App.—Tyler 1976,

writ ref'd n.r.e.). Therefore, appellant certainly should not expect relief as to an alleged improper instruction without having complained at the trial or on appeal. The record reflected evidence to support the jury's finding of injury.

The judgment should be affirmed.

BUTTS, Justice, dissenting.

I agree the jury in this case could have found slander per se as prescribed in § 570 of RESTATEMENT OF TORTS (SECOND):

One who publishes matter defamatory to another in such a manner as to make the publication a slander is subject to liability to the other although no special harm results if the publication imputes to the other

\*    \*    \*    \*    \*    \*

(c) matter incompatible with his business, trade, profession, or office, as stated in § 573 ...

Section 573 discusses slander that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, and notes no special harm need be proved. Only in cases of slander per se may general damages be found without proof of special damages or harm. The error here is the jury based all its answers on a definition of *simple slander*, not *slander per se*. And no special damages were found. The damages here are general.

In this case the proof aimed at showing the plaintiff had been harmed in her business or trade, however, the special issues submitted to the jury did not require those necessary findings.

The pertinent issues are numbers one and two, the first inquiring whether the defendant made statements to city council members and staff. The second one was:

Do you find from a preponderance of the evidence that the statements in Special Issue No. 1 were defamatory to the plaintiff.

(The jury answered "yes.")

Then followed the erroneous instruction. This is the crucial definition:

You are instructed that a defamatory statement is a statement tending to in-

jure the reputation of a person, and expose her to public hatred, contempt or ridicule, or financial injury, or to impeach her honesty, integrity or virtue.

It is clear this is not the required definition of slander per se under § 573. The jury should have been instructed that to be defamatory the statement must tend to impute unfitness to perform the duties of her employment or prejudice her in her business or trade. To be actionable per se the statement must have adversely affected her fitness for the proper conduct of her business, trade or profession, as required by § 573, *supra*. The proper instruction was not submitted to permit the jury to find slander per se. Therefore, since special damages were not submitted to the jury, the damages as awarded are *general* damages and cannot stand when not based on a slander per se finding.

Further, Special Issue No. 7 is a simple slander question (not per se). In order to sustain recovery under that finding (loss of esteem in the community), special damages or harm must also be found by the jury.

Since no issue answered by the jury was based on slander per se, I would sustain points three and five, which preserved this error—that the evidence establishes as a matter of law no special injury (harm) was sustained.